# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2361 | **DATE** | 2/24/2003 |
| **CASE TITLE** | KRIPPELZ vs. FORD MOTOR CO. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **Motion (71-1) to amend answer and affirmative defenses is granted. Motion (84-1) for summary judgment on claim 2 of patent 5,017,903 is denied. Motion (100-1) to exclude new evidence or file sur reply is denied as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | FEB 26 2003 | |
| | Notices mailed by judge's staff. | | | 03 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACOB KRIPPELZ, SR.,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

No. 98 C 2361
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Jacob Krippelz, Sr. sued the Ford Motor Company for infringing claim 2 of United States Patent No. 5,017,903 ("the '903 patent"). The '903 patent's subject matter is a lighting device that includes a housing, typically a side view mirror housing, mounted on a vehicle. Ford sells vehicles having similar lighting devices, which Krippelz claims infringe his patent. Krippelz has moved for summary judgment. During the briefing of this motion, Ford moved to exclude Krippelz's allegedly newly proffered infringement theory and evidence in support of its summary judgment motion. Finally, Ford also moved to amend its answer and affirmative defenses to include a charge of inequitable conduct. I resolve all three motions in this decision.

Krippelz's Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact thus entitling Krippelz to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of Ford on any particular issue. *Methodist Medical Center of Illinois v. American Medical Sec. Inc.*, 38 F.3d 316, 319 (7th Cir. 1994). For the purposes of

this motion, I must draw all justifiable inferences in the light most favorable to Ford and must resolve any doubt against Krippelz. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This patent infringement analysis requires me to take two steps: (1) properly construe claim 2 of the '903 patent; and (2) compare the claim to Ford's device to determine if a question of material fact exists as to whether Ford's device literally infringes claim 2. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).

Claim Construction

Claim construction involves ascertaining the true meaning and scope of claim 2. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). In doing so, I must initially look to the intrinsic evidence of record. *Vitronics*, 90 F.3d at 1582. First, I must look to the words of claim 2.[1] *Id.* Then I must review the claim's specification to determine whether Krippelz has used any terms in a manner inconsistent with their ordinary meaning. *Id.* Specifications act as a dictionary when they expressly define terms used in the claims or when they define terms by implication and are the single best guide to the meaning of a disputed term. *Id.* Finally, I may consider the prosecution history, which includes the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by Krippelz regarding the scope of claim 2. *Vitronics*, 90 F.3d at 1582. This history limits the

---

[1] I must interpret any technical term in a patent document as having the meaning given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning. *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996). Thus, a patentee may choose to use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history. *Vitronics*, 90 F.3d at 1582.

2

claim's terms to exclude any interpretation disclaimed during the patent's prosecution. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Throughout this process, I ought not rely on extrinsic evidence, such as expert testimony, unless an analysis of the intrinsic evidence alone will not resolve all the ambiguity in the claim. *Vitronics*, 90 F.3d at 1583.

Claim 2 reads as follows:

2. An emergency warning light for an automotive vehicle having a window on one side thereof, comprising in combination
   a housing mounted in a fixed, substantially unadjustable position on said vehicle adjacent to said window,
   said housing having an opening in the bottom thereof,
   a source of light mounted within said housing for directing a conical beam of light downwardly through said opening along said side of said vehicle below said window so as to be visible from in front of and from behind said vehicle, and
   said opening and said source of light being positioned to prevent said beam of light from directly impinge on said side of said vehicle.

The following sets forth the proper claim construction of each of the four elements of claim 2.

*The Housing Element*: This element of claim 2 reads "a housing mounted in a fixed, substantially unadjustable position on said vehicle." No particular type of housing is required. This element is not disputed so further discussion is unnecessary.

*The Housing Opening Element*: This element of claim 2 reads "said housing having an opening in the bottom thereof." No particular type of housing opening is required. This element is not disputed so further discussion is unnecessary.

*The Source of Light Element*: This element of claim 2 reads:

a source of light mounted within said housing for directing a conical beam of light downwardly through said opening along said side of said vehicle below said window so as to be visible from in front of and from behind said vehicle

Most of this element is undisputed. The aforementioned source of light is mounted within the housing. The source of light is for directing a conical beam of light (i.e., a beam of light that diverges) downwardly (but not necessarily perfectly, vertically downwardly) through the opening and along the side of the vehicle. The light source is for making a beam that is visible as reflected light on particulates in the air which reflected light is visible from in front of and behind the vehicle.

The interpretation of the "source of light" phrase of this element is disputed. Krippelz alleges that there is no special significance to the specific type of device that is used to make the beam of light and that "source of light" can thus include an incandescent bulb and reflector combination that produces a beam. Ford objects to this interpretation for two reasons, both of which I reject. First, Ford asserts that Krippelz's construction is "contrary to the plain meaning of a 'source' because the reflector is not part of the device that generates the light." The problem with this argument is that a source – or any device – can have multiple component parts. It is a reasonable interpretation of "source of light" to allow it to include a device comprised of two or more component parts, such as a bulb and a reflector, producing a beam of light. Ford's second objection is that in the prosecution history, Krippelz disclaimed incandescent bulbs as the source of light, and thus incandescent bulbs cannot be the source of light. I reject this objection because when Krippelz disclaimed incandescent bulbs as a "source of light" in the prosecution history, he did so only to the extent that he rejected them *or any other device that did not generate beams of light*. In other words, his disclaimer was premised on their inability to generate beams of light. However, if incandescent bulbs in combination with another component part, such as a reflector, form a device which can produce beams of light, then that device can be a "source of light."

4

*Housing Opening/Source of Light Positioning Element*: This element of claim 2 reads:

> said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle.

Krippelz argues that this element merely provides that there is a structural relationship or cooperation between the relative positioning of the source of light and the opening to prevent the beam of light from "directly impinging" on the side of the vehicle but does not require that the beam of light actually not strike the side of the vehicle. Rather, the beam of light must not *directly* strike the vehicle. Therefore, he argues that this element is still present in a device where the beam light is redirected, such as by a lens. Ford, on the other hand, argues that the prosecution history precludes such an interpretation and requires an interpretation that the beam of light not impinge on the vehicle at all. What Ford fails to consider is that there is a distinction between "impinging" and "directly impinging" that must be taken into consideration. There is merit to Krippelz's argument that the phrase "directly impinging" refers to "light that emanates directly from the source of light in the absence of any intervening optical elements that redirect the light." Construing the phrase to mean "simply that no light from the source strikes the vehicle," as put forth by Ford, would ignore the claim language "directly." In fact, Ford's interpretation would be sufficiently conveyed solely by the word "impinging." Failing to distinguish direct from indirect or re-directed rays would give no meaning to the word "directly," but it is fundamental that claims must be given their proper meaning. *Stiftung*, 945 F.2d at 1177. Correctly construed, preventing the "beam of light" from "directly impinging" means that no light directly from the source strikes the vehicle. Therefore, I hold that the beam of light referred

5

to in claim 2 likewise must not directly impinge on the vehicle itself to satisfy the element of the claim.

Literal Infringement

Having construed the elements of claim 2, the next step is to determine whether there is any genuine issue of material fact as to whether Ford's device infringes claim 2 thus precluding summary judgment. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("Literal infringement requires that every limitation of the patent claim be found in the accused infringing device."). Before addressing this, however, I must address some initial issues. First, I note that Krippelz initially challenged the device with its lens off as infringing. Therefore, for infringement purposes, I will only consider the device with the lens off and to the extent that Krippelz claims that Ford's device with the lens on infringes claim 2, I will ignore these arguments and the evidence supporting them.[2] For this reason, Ford's Motion to Exclude Plaintiff's Newly Proffered Infringement Evidence, Theory, and Argument or, in the Alternative, For Leave to File a Sur-Reply is denied is moot.

Another issue is Ford's argument that by challenging its device with the lens off, Krippelz has unlawfully altered Ford's device for its infringement proof. *See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the

---

[2] My rationale is that had Krippelz been clear from the start that he was challenging the device with the lens on as infringing, the parties may have devoted more time to briefing different issues such as, for example, the proper construction of the "housing opening" element of claim 2.

6

limitations of a patent claim."). I find that the present situation is different than the one in *High Tech*, to which Ford analogizes the present case. In *High Tech*, the claim required a camera "rotatably coupled" to a body. 49 F.3d at 1553. The accused device had all the elements of the claim, but used "easily removable set screws" to hold the camera on the body and prevent it from rotating. *Id.* at 1555. Accordingly, the set screws were the difference between infringement and non-infringement because they fundamentally changed the operation of the accused device. Ford claims that just as removing these set screws altered the device, removing the lens on its device alters it. The problem with this analogy, however, is the difference between the two devices after removing the allegedly altering component. In *High Tech*, removal of the screws presumably resulted in the camera becoming uncoupled to the body. Thus, the post-alteration device could not have been found to be infringing the claim because the claim required, at the least, a camera coupled to the body. In contrast, removal of the lens may result in a device that still infringes claim 2 patent because upon removal of the lens, it may be discovered that the beam of light from the source does not directly impinge on the side of the vehicle and that only with the assistance of the lens does its re-directed light impinge on the vehicle. However, the only way to find out is by removing the lens and examining Ford's device without it. As such, I will treat the lens as an "additional element" for the purposes of this case.[3]

Nonetheless, summary judgment is inappropriate here. Without addressing the other elements of claim 2, it is not possible to determine at this point whether the source of light

---

[3] If each of the claim elements is present, the presence of an additional element or elements in an accused device does not avoid infringement. *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984).

emitted from the lensless Ford Device directly impinges on the side of the vehicle, thus satisfying the housing opening/source of light positioning element. Krippelz alleges that the beam of light emitted is prevented from directly impinging on the side of the vehicle by the position of the opening in the bottom of the housing and of the position of the source of light relative to the opening. On the other hand, Ford argues that even without the lens, its housing opening and the source of light are positioned such that the light directly impinges on the side of the vehicle. This is a triable issue of fact, thus precluding summary judgment.

Ford's Motion to Amend

Ford has moved to amend its answer and affirmative defenses to include a charge of inequitable conduct against Krippelz. The background for this motion is the reexamination of the '903 patent by the U.S. Patent and Trademark Office ("PTO") that has occurred since the filing of Krippelz's complaint. Ford alleges that during the reexamination, Krippelz or his attorneys concealed, with intent to deceive, a 1984 Korean patent application by Kim, Ford's second translation of the revised patent application, and certain of Ford's litigation papers. Allegedly, Krippelz did so because revealing this information would have struck a fatal blow to the '903 patent. Krippelz counters that because these items are not material (and thus need not be disclosed) Ford's amendment is futile because it cannot survive a motion for summary judgment on materiality.

Leave to amend a party's pleadings is left to my discretion, and I should freely grant leave where justice so requires. *Figgie Intern. Inc. v. Miller*, 966 F.2d 1178, 1180-81 (7th Cir. 1992). However, leave is inappropriate when the proposed amendment would be futile. *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962). The parties here dispute the standard used in determining futility. According to Krippelz, an amendment is futile if the amended pleading fails to state a claim or could not withstand a motion for summary judgment, but according to Ford, an amendment is futile if it "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." As recently clarified by *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428 (N.D. Ill. 2002), Ford's position is correct. Like Krippelz, the *Sebring* plaintiff's futility argument was that the amended claims could not withstand a motion for summary judgment, but the court rejected this position noting that in the Seventh Circuit a "'proposed amendment is futile . . . if it could not withstand a Rule 12(b)(6) motion to dismiss.'" *Id.* at 430 (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000)); *see also J.D. Marshall Intern., Inc. v. Redstart, Inc.*, 935 F.2d 815, 819-20 (7th Cir. 1991); *Brandt v. Grounds*, 687 F.2d 895, 899 (7th Cir. 1982); *Kamsler v. H.A. Seinscheimer Co.*, 347 F.2d 740, 742 (7th Cir. 1965); *In re Brand Name Prescription Drugs Antitrust Litigation*, 177 F.R.D. 414, 423 (N.D. Ill. 1997).

Krippelz's confusion as to the standard for futility is understandable because, at first glance, Seventh Circuit law appears to support his position. *See Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); *Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995); *Estate of Porter v. State of Ill.*, 36 F.3d 684, 690 (7th Cir. 1994). All of these cases on which Krippelz relies, however, differ from the case at bar in that although, in each, the request for leave to amend was made while a summary judgment motion was pending, leave to amend was denied at the same time that summary judgment was *granted*, and the summary judgment

record conclusively established that the proposed amendment was futile. In contrast, in the present case, I am *denying* summary judgment and so therefore there is no record conclusively establishing that the proposed amendment is futile.

Therefore, I must determine whether Ford's proposed inequitable conduct amendment can survive a motion to dismiss. Every patent applicant has an absolute and uncompromising duty of candor to the PTO during the prosecution of a patent application. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 818 (1945). This duty also applies to applicants in a reexamination. 37 C.F.R. § 1.555. When a party breaches this duty by failing to disclose material information, or submitting false material information, with the intent to deceive the PTO, that party engages in inequitable conduct. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). Thus, inequitable conduct requires evidence of materiality and intent. Here, I find that Ford has sufficiently presented allegations that, if accepted as true (which I must do for this motion), state a prima facie case of inequitable conduct, a finding of which would render the '903 patent unenforceable. Ford has pled both materiality and intent. Like the plaintiff in *Sebring*, Krippelz makes no attempt to show that Ford's added count of inequitable conduct fails to state a claim. Instead, he argues that Ford cannot survive a motion for summary judgment on materiality. This analysis is misdirected and premature and fails to demonstrate futility. Therefore, denying leave to amend on this ground would be improper. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 487, at 637-42 (2d ed. 1990).

For the reasons stated above, Krippelz's Motion for a Summary Judgment Adjudication of Infringement of Claim 2 of United States Patent No. 5,017,903 is DENIED, Ford's Motion to Amend its Answer and Affirmative Defenses is GRANTED, and Ford's Motion to Exclude Plaintiff's Newly Proffered Infringement Evidence, Theory, and Argument or, in the Alternative, For Leave to File a Sur-Reply is DENIED as moot.

ENTER:

James B. Zagel
United States District Judge

DATE: 24 February 2003