# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2361 | **DATE** | 5/13/2003 |
| **CASE TITLE** | JACOB KRIPPELZ, SR. vs. FORD MOTOR COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due _____ . Reply to answer brief due _____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (105-1) for reconsideration is denied. Motion (112-1) for reconsideration is denied. Motion (115-1) to strike is granted/denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 5-15-03 date docketed | |
| ✓ | Docketing to mail notices. | | 125 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | FILED FOR DOCKETING 03 MAY 14 PM 7:24 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 1 5 2003

JACOB KRIPPELZ, SR.,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

No. 98 C 2361
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Jacob Krippelz, Sr. sued the Ford Motor Company for infringing claim 2 of United States Patent No. 5,017,903 ("the '903 patent"). The '903 patent's subject matter is a lighting device that includes a housing, typically a side view mirror housing, mounted on a vehicle. Ford sells vehicles having similar lighting devices ("Ford device"), which Krippelz claims infringe his patent. In response to my February 24, 2003 order denying Krippelz's motion for summary judgment and granting Ford's motion to amend its answer and affirmative defenses, *see Krippelz v. Ford Motor Company, No. 98 C 2361, order of February 24, 2003*, Ford has submitted a motion to reconsider, and Krippelz has submitted both a motion to reconsider and a motion to strike certain of Ford's affirmative defenses.

Ford's Motion for Reconsideration

In his summary judgment motion, Krippelz argued that the Ford device infringes without its lens. In my order denying Krippelz's motion, I accepted the position that it is proper to examine the Ford device without its lens because the lens constituted an additional element. As a general rule, if each of the claim elements is present in an accused device, the presence of an

125

additional element will not avoid infringement. *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984).[1] In my order, I distinguished the present case from the one in *High Tech Med. Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551 (Fed. Cir. 1995), which held that a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim. In its motion for reconsideration, Ford argues that I have improperly distinguished *High Tech* from the present case based on my misunderstanding of the factual background of *High Tech*. Although Ford may be correct, reconsideration of my decision is not appropriate because the attempt to distinguish the cases was not central to the disposition of the motion. Regardless of *High Tech*, I found that the lens on the Ford device constituted an additional element and rejected Ford's argument that removing the lens constituted alteration of the Ford device.[2] Nonetheless, I have contributed to this resulting confusion by not clearly setting out my reasoning. So let me do so now.

---

[1] *See also, Acme Highway Products Corp. v. D.S. Brown Co.*, 473 F.2d 849, 855 (6th Cir. 1973) ("An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent."); *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 402 (10th Cir.1965) ("But infringement cannot be avoided by the mere fact that the accused device is more or less efficient or performs additional functions."); *Eastern Rotorcraft Corp. v. United States*, 397 F.2d 978, 981 (Ct.Cl.1968) (infringement not avoided by adding an additional element).

[2] Ford's argument that removal constitutes alteration – an argument claimed to be supported by *High Tech* – is intuitively problematic because it would essentially invalidate the law regarding additional elements. In every situation where an additional element has been added to an accused device, removing that additional element would arguably constitute "alteration" under Ford's theory. It appears to me that Ford's argument regarding alteration neither acknowledges the legal significance of an additional element nor adequately distinguishes it from an alteration.

> As before, I take guidance from *Stiftung*:
>
> "It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become non-infringing when incorporated into a complex machine that limits or controls what the pencil can write. Neither would infringement be negated simply because the patentee failed to contemplate use of the pencil in that environment."

945 F.2d at 1178 (quoting *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983)). Here, it is possible, as alleged by Krippelz, that the Ford device may be "structurally infringing" claim 2 of the '903 patent. Contrary to Ford's assertion, removing the lens does not "alter" the device such that it may infringe. The Ford device has a structure, independent of the lens, and this structure may infringe claim 2. If it does infringe, the addition of the lens does not negate infringement just like the hypothetical described above; if the pencil structurally infringes a patent claim, the pencil's incorporation in a complex machine which limits the pencil's use does not negate infringement. Accordingly, Ford has presented no basis for reconsideration of this finding.

## Krippelz's Motion for Reconsideration

In my February 24, 2003 order, I found the presence of a genuine issue of material fact as to whether the beam of light emitted by the Ford device directly impinges the side of the Ford vehicle. In its motion for reconsideration, Krippelz submits that this is not a genuine issue because the uncontroverted evidence shows that the Ford device without the lens produces a downwardly directed beam of light that does not impinge on the side of the vehicle. As Krippelz notes, the distinction between "beam light" and "light" is critical to determining infringement of

claim 2. To infringe, the Ford device must produce a "beam of light" that does "not directly impinge on the vehicle itself," but this limitation does not preclude any other light (i.e., "non-beam" light emitted from the device) from directly impinging on the vehicle.

Ford's objection to Krippelz's "beam light" / "non-beam light" argument is that this is an improper request for a new claim construction. *See Keene v. Int'l Fid. Ins. Co.*, 561 F.Supp. 656, 665-66 (N.D. Ill. 1982) (citations omitted), *aff'd* 736 F.2d 388 (7th Cir. 1984) (noting that motions for reconsideration should not "serve as the occasion to tender new legal theories for the first time"), but I disagree with the objection that Krippelz is raising a "new legal theory" in its motion. Rather, Krippelz is merely pointing out an alleged misapplication of an already-construed claim. The thrust of his argument is that I have misapplied the Housing Opening / Source of Light Positioning Element of claim 2 by failing to properly distinguish beam from non-beam light when I found that there were triable issues of material fact present in this case. Ford is mistaken when it claims that "[n]either term appears anywhere in the claim nor in the Court's February 24, 2003 Memorandum Opinion and Order." Claim 2 twice refers to a "beam of light." Therefore, in considering whether the Opening/Source of Light Positioning Element is met in the Ford device, it is proper for me to consider whether the light emitted from the Ford device and directly impinging on the vehicle side is part of a beam of light (*i.e.*, beam light) or not (*i.e.*, non-beam light). Finally, I disagree with Ford's interpretation that the Board's analysis makes clear that the "source of light" claim term is limited to light sources which produce only a beam of light. The Board held that a "light source generating light which is not a 'beam,' [cannot infringe] the instant claimed invention," but this does not preclude a light source generating light

4

that is a combination of beam and non-beam light. While a "beam of light" is a requirement, it is not an exclusive requirement; other light may be emitted as well.

It is undisputed that some light from the Ford device infringes on the side of the vehicle, but the parties disagree on what this means. According to Krippelz, the Ford device creates two types of light, beam light and non-beam light, and some portion of the non-beam light strikes the side of the vehicle. According to Ford, the light produced from its courtesy lamp that impinges on the side of the vehicle is part of the beam of light produced from the lamp. Aside from this assertion, however, Ford provides no explanation or characterization of the nature of that light. Nonetheless, Krippelz has the burden of demonstrating that there is no genuine issue of material fact here, and I remain unconvinced that the light that strikes the side of the Ford vehicle is entirely non-beam light. In fact, as Krippelz acknowledges in his reply brief to this motion, Ford has "established . . . that 'light' of some indeterminate nature struck the side of the vehicle." It is this "indeterminate nature" of the light that leads me to deny a reconsideration of my summary judgment denial.

Complicating this issue is the fact that in defending against Krippelz's summary judgment motion, Ford argued that its device did not produce a beam of light, as required under claim 2. It is unfair to expect that at the same time it was arguing its device did not produce any beam, it should simultaneously argue that the light striking the vehicle in its photos was part of the same beam which it denied existed. If Krippelz wishes to seek reconsideration of this issue, I believe it only fair to give Ford an opportunity to respond in full now that it has lost both on the issue that its device does not produce a beam of light and on the issue that Krippelz is seeking a new claim construction here. Therefore, despite the large amount of paperwork already

5

generated by the original summary judgment request, I invite Krippelz to submit a second motion for summary judgment addressing the specific issue of whether the light emitted from the Ford device and striking the vehicle side is beam or non-beam light. Should Krippelz choose to do so, it would be of great assistance to this Court if the parties submitted new statements of material facts (with all supporting exhibits attached) specifically addressing whether it is beam or non-beam light striking the vehicle.

## Krippelz's Motion to Strike Certain of Defendants' Affirmative Defenses

On March 6, 2003, Ford amended its Answer and Affirmative Defenses by adding an affirmative defense alleging inequitable conduct for the alleged failure by Krippelz or his counsel to disclose to the Patent Office: (1) Ford's summary judgment brief and attached photographs; (2) Ford's translation of a Korean reference; and (3) a Korean language reference. Krippelz now moves, pursuant to Federal Rule of Civil Procedure 12(f), to strike the inequitable conduct charges stemming for the failure to disclose items (1) and (2) above. Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." To prevail on a motion to strike, Krippelz must show that "it is impossible for [Ford] to prove a set of facts in support of the affirmative defense that would defeat the complaint," and thus the matter must be stricken as legally insufficient. *See Videojet Sys. Int'l, Inc. v. Inkjet, Inc.*, No. 95 C 7016, 1997 WL 124259, at *4 (N.D. Ill. Mar. 17, 1997). In evaluating a motion to strike, "the Court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings." *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072, 1073 (M.D. Fl. 1989). When ruling on a motion to strike "a court must

view the pleadings in the light most favorable to the non-moving party." *State of California v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

The basis for Krippelz's motion to strike is his argument that, as a matter of law, there is no requirement that a party in a reexamination submit to the Patent Office the litigation arguments, reports and exhibits of an adverse party. Krippelz cites two cases in support of his argument. The first case is *E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, No. C-89-2860 MPH, 1990 WL 305551 (N.D. Cal. Dec. 3, 1990). Krippelz asserts that this case rejected the assertion that a patentee's failure to inform an examiner in a reexamination proceeding of materials in statements, deposition testimony, and deposition exhibits could constitute inequitable conduct. Krippelz slightly mischaracterizes the court's specific ruling. The court wrote:

> Plaintiff also faults Cetus for failing to inform the Examiner of materials in statements, deposition testimony and deposition exhibits that, in plaintiff's judgment, tended to show that the Khorana prior art anticipated '202 and '195. However, the statute governing reexamination, 35 U.S.C. § 301 *et seq.*, nowhere imposes upon the patent owner a duty to identify and disclose to the Examiner all evidence that might arguably invalidate the patent under reexamination; nor does plaintiff cite any case law indicating that courts have imposed such a duty.

*Id.* at *7. Nowhere in the aforementioned passage does the court specifically refer to any charges of inequitable conduct. The passage only refers to the non-existence of a patent owner's duty to disclose certain information during a reexamination proceeding. Regardless, as a matter of law, the court has mistakenly characterized this duty.

As a general rule, every patent applicant has an absolute and uncompromising duty of candor to the Patent Office during the prosecution of a patent office. *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 818 (1945) ("Those who have applications

7

pending with the Patent Office . . . have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue."); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) ("Applicants for patents are required to prosecute patent applications in the [Patent Office] with candor, good faith and honesty."). This duty of candor applies to applications in a reexamination:

> (a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective reexamination occurs when, at the time a reexamination proceeding is being conducted, the Office is aware of and evaluates the teachings of all information material to patentability in a reexamination proceeding. Each individual associated with the patent owner in a reexamination proceeding has a **duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability in a reexamination proceeding.** . . . [T]he duties of candor, good faith, and disclosure have not been complied with if any fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct by, or on behalf of, the patent owner in the reexamination proceeding. Any information disclosure statement must be filed with the items listed in § 1.98(a) as applied to individuals associated with the patent owner in a reexamination proceeding, and should be filed within two months of the date of the order for reexamination, or as soon thereafter as possible.
>
> (b) Under this section, information is material to patentability in a reexamination proceeding when it is not cumulative to information of record or being made of record in the reexamination proceeding, and
>
> \* \* \*
>
> > (2) It refutes, or is inconsistent with, a position the patent owner takes in:
> >
> > > (i) Opposing an argument of unpatentability relied on by the Office, or
> > >
> > > (ii) Asserting an argument of patentability.

37 C.F.R. § 1.555 (emphasis added). I see no limitation on the term "all information" in subsection (a) such that the duty of disclosure does not apply to materials in statements,

8

deposition testimony, and deposition exhibits. A patent owner may indeed have a duty to disclose "all evidence that might arguably invalidate the patent under reexamination," *Du Pont*, 1990 WL 305551, at *7, if he knows that all of that evidence is material. This is in direct contrast with *Du Pont*'s holding. Accordingly, to the extent *Du Pont* conflicts with § 1.555, it mischaracterizes the duty of disclosure for a patent owner during a reexamination proceeding.

However, the Federal Circuit Court of Appeals has implicitly affirmed at least one limitation to § 1.555. That limitation comes from Krippelz's second cited case, *Dow Chem. Co. v. Halliburton Co.*, 631 F. Supp. 666 (N.D. Miss. 1985), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986). In that case, the court wrote that an:

> applicant has no duty to disclose conflicting test data prepared by one contesting the patent, with which data the applicant takes issue, since the Patent Office has no laboratory or technical assistance means to evaluate such conflicts, nor does an applicant have any duty to call to the attention of the Patent Office *good faith differences of opinion* between the applicant and the other as to the technical or legal correctness of interpretations of matters bearing upon the application.

*Id.* at 706 (emphasis added). This first part of this holding is irrelevant to our present case because there is no "conflicting test data" at issue here and, even if there was, the basis for the court excusing the patentee's failure to disclose the data was that the Patent Office lacked the capacity to independently resolve the differences in the conflicting test data. However, the undisclosed items at issue here are materials that the Patent Office may be quite able to evaluate.

Unlike the first part of the court's holding, the second part – regarding the non-existence of a duty to disclose "good faith differences of opinion" between the parties – is relevant to our present case. I find that some of the items that Krippelz allegedly failed to disclose fall within the category of "good faith differences of opinion," namely Ford's summary judgment brief and

9

Ford's translation of the Korean reference. Therefore, to the extent that Ford alleges inequitable conduct on the basis of Krippelz's failure to disclose these items, such allegations are hereby stricken. In contrast, I find that the remaining items which Krippelz allegedly failed to disclose – the photographs and the Korean language reference – do not fall within the category of "good faith differences of opinion" between the parties. Therefore, to the extent that Ford alleges inequitable conduct on the basis of Krippelz's failure to disclose these items, such allegations are not stricken. As to these allegations, Ford has sufficiently pleaded materiality and intent which, if accepted as true (which I had to do for the motion), state a prima facie case of inequitable conduct, a finding which would render the '903 patent unenforceable. *See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988).

For the reasons above, Ford's Motion for Reconsideration of a Portion of the February 24, 2003 Memorandum Opinion and Order Denying Krippelz's Motion for Summary Judgment is DENIED; Krippelz's Motion for Reconsideration is DENIED; and Krippelz's Motion to Strike Certain of Defendants' Affirmative Defenses is GRANTED in part and DENIED in part.

ENTER:

James B. Zagel
United States District Judge

DATE: 13 May 2003