Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2361 | **DATE** | 7/20/2004 |
| **CASE TITLE** | KRIPPELZ vs. FORD MOTOR CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Motion (114-1) for claim construction is granted in part, denied in part, and continued in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 7-21-04 date docketed | |
| ✓ | Docketing to mail notices. | | | 158 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 2004 JUL 20 PM 7:49 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

JACOB KRIPPELZ, SR.,

Plaintiff,

v.

FORD MOTOR COMPANY,

Defendant.

No. 98 C 2361
Judge James B. Zagel

# MEMORANDUM OPINION AND ORDER

Ford has moved for claim construction for the following four additional terms of claim 2 of U.S. Patent No. 5,017,903 ("the '903 patent"): (1) "a conical beam of light," (2) "opening," (3) "directly impinging," and (4) "said side of said vehicle."[1]

## "A Conical Beam of Light"

The "source of light" limitation of claim 2 reads: "a source of light mounted within said housing for directing a conical beam of light downwardly through said opening along said side of said vehicle below said window so as to be visible from in front of and from behind said vehicle." Ford argues that the term "a conical beam of light" should be construed as "all light from the source that passes through the housing opening."[2] Ford claims that this construction is

---

[1] To the extent I have already construed any of these terms or portions of them, Ford's motion is treated as a motion for reconsideration.

[2] In its reply brief, Ford offers a "slight" modification, proposing that the term be construed as "the real-world beam light from the source of light that actually passes through a lensless housing opening." However, because Ford in the same breath "reserves its right to seek review of the Court's Orders on appeal," I will fully explain my rejection of Ford's initial proposal before offering my final construction, which adopts a portion of Ford's revised

consistent with Krippelz's use of the term "beam of light" in the '903 patent because the patent "teaches that all of the light from the 'source of light' is part of the 'beam of light.'" Unfortunately, I see no such limitation in the patent that all of the light from the "source of light" is part of the "beam of light." While the "source of light" does generate a "beam of light," there is no provision explicitly teaching that the "source of light" cannot produce any other light (*i.e.*, non-beam light), and I should not impose negative limitations on a claim that are not explicitly provided in the claim. *See Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003) ("When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim.") (quoting *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1364-65 (Fed. Cir. 2001)).

Furthermore, the description of the term "light beam" by the Board of Patent Appeals and Interferences ("the Board") during reexamination does not support Ford's proposed construction.[3] The key phrase from the Board's description is that light must have some "defined sweep range" in order to be a beam, but there is no limitation in the patent that the "source of light" may produce some additional light outside of this "defined sweep range."

Moreover, I reject Ford's argument that Krippelz is estopped from arguing that claim 2's "source of light" produces "non-beam light" based on the Board's holding that Krippelz is estopped from claiming that "a similar source, using an incandescent bulb, or other light source generating light which is not a 'beam,' infringes the instant claimed invention." There is a

---

proposal.

[3] I treat the terms "light beam" and "beam of light" synonymously.

2

difference between a light source that exclusively generates non-beam light (one which Krippelz is estopped from arguing infringes its patent) and a light source that generates both beam and non-beam light (one which Krippelz may argue infringes its patent).

Finally, I reject Ford's argument that adopting the distinction between beam and non-beam light would invalidate Krippelz's patent. Ford claims that patent would be invalid because it would fail to meet the statutory written description requirement of 35 U.S.C. § 112 because neither the claim specification nor the prosecution history contains a "*disclosure* of how anyone would determine which light rays are critical 'beam light' and which the irrelevant 'non-beam light.'" (emphasis added). However, the relevant inquiry under the written description requirement is that the patent specification "must clearly *allow* persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (emphasis added). The claim specification here does indeed *allow* a person of ordinary skill in the art to determine the nature of the light generated by the "source of light," although it does not explicitly *disclose* precisely how one goes about doing so. As noted by the Board, beam light must have some "defined sweep range," and by inference, it must be possible to measure this "defined sweep range" and thus distinguish between non-beam and beam light.

Accordingly, the term "a conical beam of light" will be construed as "a conical light beam from the source of light that actually passes through a lensless housing opening."[4]

---

[4] I am confused as to what Ford's proposed "real world" term adds to this construction with the inclusion of its proposed term "actually passes through." Aside from the allure of some possible, but non-existent, connection to a long-running reality-based TV show, I see no need for this additional term.

3

"Opening"

In my February 24, 2003 Memorandum Opinion and Order, I provided a construction of the limitation "said housing having an opening in the bottom thereof." I noted that "[n]o particular type of housing opening is required" and that "this element is not disputed so further discussion is unnecessary." Because there was no particular significance to the term "opening" raised by Krippelz's summary judgment motion, I did not discuss or analyze the meaning of the term "opening" in the housing opening limitation. Ford now asks that the term "opening" in claim 2 be construed as "an unobstructed hole in the housing."

It is presumed that a claim term carries its ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). To determine the ordinary meaning of claim terms, I may consult relevant dictionaries. *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002). Ford claims that the ordinary meaning of "opening" is "an open space serving as a passage or gap;" "a breach or aperture." While Exhibit Q does define "opening" as a "breach" or "aperture," I do not see Ford's basis for "an open space serving as a passage or gap." This must be an inadvertent mistake. I do see the following definition: "something that is open."

Nonetheless, regardless of which definition one chooses, I see no basis for using Ford's additional term "unobstructed." More than merely adding an additional word, using the word "unobstructed" adds the additional meaning that an opening must be unobstructed in order to qualify as an opening under the claim. Under such a construction, even a partial obstruction of some type may prevent something from being considered an "opening" within the meaning of the term. Such a limitation, however, is not explicitly stated in the claim and, more importantly,

4

goes beyond the ordinary meaning which Ford concedes I should use. Accordingly, the term "opening" will be construed as "something that is open; breach; aperture."[5]

"Directly Impinging"

Ford also seeks a construction of the claim term "directly impinging" in the last clause of claim 2: "said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle." I construed the last clause of claim 2 in my February 24, 2003 Order:

> Correctly construed, preventing the "beam of light" from "directly impinging" means that no light directly from the source strikes the vehicle.

Ford argues that the term "directly impinging" should now be construed as "striking the vehicle without first reflecting off anything else." Krippelz argues that I should stick with my first construction.

The suggestions by Krippelz and Ford both have merit. Combining the two suggestions, I construe the term "directly impinging" as follows:

> "Directly impinging" means that no beam light directly from the source strikes the vehicle. However, beam light from the source that strikes the vehicle as a result of any intervening optical elements that redirect the light does not fall within this construction.

As I noted in my February Order, the term "directly impinging" is different from the term "impinging." This construction gives appropriate meaning to the word "directly."

---

[5] As Ford acknowledges, my construction of the term "opening" has no effect on my previous holding that the lens in the opening of the Ford Lighting Device is an additional element. If, at some point during the course of this litigation, Ford argues that this construction has some effect on this ruling, then I will revisit the construction of the term as opposed to the ruling.

5

One problem with Ford's analysis is that it infers that no light coming out of the housing opening may "directly impinge" on the side of the vehicle. However, as discussed above, there may be both beam and non-beam light that comes out of the housing opening, and if any non-beam light strikes the vehicle this would have no effect on the clause of claim 2 regarding "said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle." In essence, Ford's analysis is too broad. It is critical to determine whether the light "directly impinging" on the vehicle, if there is any in the first place, is beam or non-beam light.

"Said Side of Said Vehicle"

Finally, Ford claims that the last clause of claim 2 contains a second phrase that requires construction: "said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle." Ford contends that the correct construction of the phrase "said side of said vehicle" means "any part of the side of the vehicle, including the running boards and tires." Krippelz claims that the construction of the term should not include the running boards and tires.

After consulting the briefs on this issue, the term "side" as it pertains to the "side" of a vehicle remains ambiguous. More specifically, the intrinsic evidence is insufficient for determining whether the construction should include or exclude the running boards and tires on a vehicle, and extrinsic evidence would be helpful on this issue. *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir.), *cert. den.*, 124 S.Ct. 922 (2003); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996). A *Markman* hearing or at least

6

additional extrinsic evidence and/or expert testimony on the construction of this term would be helpful. *See, e.g., Huang v. Auto-Shade, Inc.*, 945 F. Supp. 1307, 1308 (C.D. Cal. 1996); *Genentech, Inc. v Boehringer Mannheim GmbH*, 989 F. Supp. 359 (D. Mass. 1997). Therefore, at the next status, the parties will discuss their preferred options for resolving this issue. In the meantime, I am staying any rulings on the pending summary judgment motions until this last claim term has been construed.

For the reasons above, Ford's Motion for Claim Construction is GRANTED in part, DENIED in part, and ENTERED AND CONTINUED in part as described above.

ENTER:

James B. Zagel
United States District Judge

DATE: JUL 2 0 2004