UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACOB KRIPPELZ, SR.,

    Plaintiff,

    v.

FORD MOTOR COMPANY,

    Defendant.

No. 98 C 2361
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The Jury awarded Plaintiff Jacob Krippelz $23 million in royalties to compensate him for Defendant Ford's infringement of Krippelz's puddle lamp patent. Krippelz now moves for prejudgment interest and costs, as well as enhanced damages. For the following reasons, Krippelz's motions are granted in large part.

**II. DISCUSSION**

**A. Prejudgment Interest and Costs**

The Supreme Court has held that under 35 U.S.C. § 284, "prejudgment interest should ordinarily be awarded" when a plaintiff in a patent infringement suit prevails on his claim. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983). However, an award of prejudgment interest is not required whenever a defendant is found to have infringed. *Id.* at 656. Prejudgment interest may be limited or denied where, for example, the patent owner has caused undue delay in prosecution of the suit. *Id.* at 657.

Ford argues that Krippelz unduly delayed prosecuting this suit by (1) failing to file a motion for preliminary injunction; (2) filing for a reexamination of his patent; and (3) failing to

file a motion for summary judgment earlier in the course of the litigation. In support of its position, Ford cites *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, where the Federal Circuit upheld the district court's denial of prejudgment interest where the plaintiff's two-year delay in filing suit against the defendant caused the damages owed by the defendant to escalate. 246 F.3d 1336, 1362 (Fed. Cir. 2001). In that case, the plaintiff had reverse engineered the product at issue, determined that it infringed plaintiff's patent, but waited two years before filing suit. *Id.* In the interim, the plaintiff failed to notify the defendant of the existence of plaintiff's patent, although it had notified 30 to 40 other companies. The Court affirmed the district court's finding that delay had been a self-serving litigation tactic on the part of the plaintiffs, resulting in prejudice to the defendant. *Id.* The district court had, according to the Federal Circuit, correctly denied the plaintiff prejudgment interest.

In this case, Ford does not allege any delay in filing of the suit, and it is unclear how Krippelz's failure to file for a preliminary injunction and summary judgment, and the reexamination, "caused" the damages owed by Ford to escalate. When Krippelz filed suit in 1998, Ford was on notice of the possibility of infringement, and, unlike the defendants in Crystal, was in a position to discontinue the sale of infringing puddle lamps. Ford points to no authority requiring a plaintiff to file for preliminary injunction or for summary judgment in order to recover prejudgment interest. Neither does Ford point to an authority suggesting that a reexamination or stay of litigation results in the forfeiture of prejudgment interest by the plaintiff. Ford argues that it should not be punished for the three-year delay caused when the litigation was stayed pending the reexamination requested by Krippelz. During that time, "Ford introduced several new courtesy lamp designs, some of which were later found to infringe." However, the

decision to introduce these products and to continue the sale of other infringing products was entirely within Ford's control. Ford was on notice of the potential infringement and brought these new products to market anyway. It is difficult to see how anyone but Ford caused the damages owed to Krippelz to escalate.

**1. The Appropriate Interest Rate**

Krippelz argues that because "there is a significant risk of default by the defendant[,]" the appropriate prejudgment interest rate in this case is prime plus one percent. Ford argues that the T-Bill rate is appropriate here as it will adequately compensate Krippelz.

The Seventh Circuit has directed district courts to use the prime rate in determining prejudgment interest. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). "That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default." *Id.* The T-Bill rate, the Court noted, is "too low, because there is no default risk with Treasury Bills." *Id.* at 437.

Ford points to several patent cases in which courts have held that the T-Bill interest rate adequately compensated the plaintiff for the lost use of the money owed to him. But only one of these cases addresses the risk of non-repayment, and notes that the prime rate would be more appropriate than the T-Bill rate in order to compensate a plaintiff for the risk of non repayment, a risk that was nonexistent in that case. *Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04 C 7955, 2006 WL 3359349 at *11 (N.D. Ill. 2006), vacated on other grounds, 260 Fed. Appx. 284

(Fed. Cir. 2008).[1] Krippelz argues that because in 2005 Ford's credit rating was downgraded from "investment grade" to "speculative grade," and because lenders to Ford are now subject to "high credit risk," a prejudgment interest rate higher than prime is warranted here. Furthermore, argues Krippelz, Ford's financial performance has been in decline since 2008, and it has depleted its cash reserves. It is true that at the close of the third quarter of 2009, Ford reported a profit of nearly $1 billion, however, Ford's current $26.9 billion debt exceeds its $23.8 billion gross cash.

As evidenced by Ford's credit rating and current financial situation there is a risk of non-repayment here, and thus the T-Bill rate is inappropriate here. But should the rate be higher than prime, or prime plus one percent as suggested by Krippelz? "The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered in deciding what a compensatory rate of interest would be." *Gorenstein*, 874 F.2d at 436. The Court in Gorenstein chose the prime rate for convenience, but "a more precise estimate would be the interest rate paid by the defendant for unsecured loans." *Id.* at 437. During the ten-year period of infringement, Ford's long-term and short-term borrowing rate has averaged between .7% and 1.47% above prime. Because of the large risk of non-repayment, the rate of prime plus one percent is appropriate here.

---

[1] In two of the other cited cases, *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) and *Transco Prods., Inc. v. Performance Contracting, Inc.*, 131 F. Supp. 2d 976, 982 (N.D. Ill. 2001), the courts found the T-Bill rate adequate to compensate the plaintiffs since there was no evidence that they borrowed money at a higher rate, nor was there any causal connection between any borrowing and the loss of the use of royalty money owed as a result of the infringement. Neither of these cases addresses the issue raised by Krippelz which is whether the T-Bill rate adequately compensated a plaintiff where there is a risk of non-repayment by the defendants.

**2. Compounding interest**

There is no dispute that the question of whether interest should be compounded is a matter of discretion for the district court. However, "[i]t has been recognized that an award of compound rather than simple interest assures that the patent owner is fully compensated." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (quotations and citation omitted). The Seventh Circuit has noted that "compound interest ought to be the norm in federal matters," absent any special circumstances.[2] *Amer. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 938 (7th Cir. 2003) (emphasis in original). According to Ford, delays caused by Krippelz warrant an award of simple, rather than compounding interest. However, as discussed supra, Krippelz caused no unreasonable delay in the proceedings. In my opinion on the issue of Ford's infringement, I found that delay in resolving the question of which Ford lamps were infringing was a consequence of flawed testing procedures used by Ford. Ford has failed to demonstrate the existence of any special circumstance warranting a deviation from the norm put forth by the Seventh Circuit, and as a result, the interest in this case must be compounded.

Krippelz argues that interest awarded him be compounded on a quarterly basis, but Ford further asks the court to compound any interest annually rather than quarterly. Because Ford offers no argument as to why annual compounding is more appropriate in this case than quarterly, the interest award to Krippelz will be compounded quarterly.

---

[2] The Court in *American National Fire* noted that "at least in a federal question case, a district court must explain why it believes it appropriate to deviate from the norm of compound interest, the measure that most completely fulfills the purpose of prejudgment interest of ensuring 'complete compensation.'" 325 F.3d at n.11. The Court discussed unreasonable delay by the prevailing party as one instance where a court might be within its discretion to deny interest or the compounding of interest. Unreasonable delay is the only argument Ford makes against compounding interest in this case.

**3. Interest during stay**

At the close of fact discovery, Krippelz filed for a reexamination of his patent, and Krippelz moved to stay the litigation pending this reexamination. Ford argues that it should not be punished for what turned out to be a three-year delay and that prejudgment interest should not be awarded for this period. In support of its argument, Ford points to *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1546 (Fed. Cir. 1991). In that case, the Court affirmed the district court's exclusion of prejudgment interest where licensee originally requested, and both parties eventually agreed, to stay the proceeding pending an appeal of a separate action involving the patent at issue. There is little detail in both the district court and Federal Circuit opinions as to the pending appeal and the circumstances of the stay. In *Allen Archery, Inc. v. Browning Manufacturing, Co.*, 898 F.2d 787 (Fed. Cir. 1990), the Court reversed the lower court's exclusion of prejudgment interest during a stay pending a decision in another case involving the same patent. In that case, the plaintiff initially opposed a stay, but joined in the stay request after his motion to consolidate discovery in the two cases was denied. *Id.* at 791. The Court noted that under such circumstances the plaintiff could not be said to have "caused" the delay. Id. at 792. Furthermore, the delay was neither undue nor unjustified, since the stay conserved judicial and attorney resources. *Id.* Had the court in the related case found the patent claims invalid, there would have been no need for the case to be tried. *Id*.

In this case, similar to Uniroyal, Plaintiff sought the stay and Defendant opposed it. However, just as in Allen, the stay conserved judicial and attorney resources. Had the reexamination resulted in the rejection of the claim in question, Krippelz would have had to narrow or cancel the claim, or appeal the decision of the reexamination, and the litigation would

have taken a different tack or come to an end. Even though Krippelz "caused" the delay by requesting a stay, because the stay conserved the resources of the parties and the court, it was neither unreasonable nor unjustified. For this reason, prejudgment interest should be awarded for the period during which the case was stayed.

**4. Taxation**

Ford argues that any award of prejudgment interest must be based on the after-tax value of the principal amount. According to Ford, had Krippelz received royalty payments annually, these payments would have been taxed as ordinary income, and Krippelz would have been unable to use taxable portions of the royalties. However, this argument overlooks the fact that Krippelz will be taxed when he recovers damages. Using the after-tax value to calculate damages would result in double taxation for Krippelz. Furthermore, a reduction based on prior years' taxes would be too speculative and difficult to calculate, since Krippelz's deductions, losses and other offsets would affect his tax status and would need to be re-examined for each year in question. *See Hughes Aircraft Co. v. U.S.*, 86 F.3d 1566, 1575 (Fed. Cir. 1996), vacated on other grounds, 520 U.S. 1183 (1997) (reducing an award by prior years' taxes "would be speculative due to Hughes' particular tax situation, including what actions [the plaintiff] might have taken to reduce such taxes in prior years.") For these reasons, taxes should not be deducted from Krippelz's award of prejudgment interest. *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1483 (Fed. Cir. 1990) (noting that the "Hanover Shoe rule" of not deducting taxes from damages awards has been followed in patent infringement cases and holding that taxes should not be deducted from lost profit award).

**5. Calculation of prejudgment interest**

In his calculations, Krippelz's expert compounded interest at the beginning of each quarter in order to compensate for the delay between the introduction and sale of the 1998 models in late 1997, the beginning of the infringement. Ford argues that this method of calculation is inaccurate, and interest should be compounded at each quarter's end. Had Ford been making quarterly royalty payments to Krippelz, they would have been based on sales made during each quarter, calculated at quarters' ends, and then paid to Krippelz. Using Krippelz's method, Krippelz would have received royalty payments at the beginning of each quarter - something that would have been impossible considering Ford would not have known at the beginning of the quarter how many vehicles would be sold by the end of the quarter. For this reason, interest should be compounded at the end of each quarter.

For these reasons, I am awarding $11,685,957 in prejudgment interest, calculated using an interest rate of prime plus 1%, compounded quarterly, on the first day following the quarter during which the royalties were actually earned.

**6. Costs**

I am granting Krippelz's motion for costs. Pursuant to Local Rule 54.1, Krippelz may file his detailed bill of costs within 30 days after entry of judgment.

**B. Enhanced Damages**

In *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), abrogated in part on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), the Federal Circuit set forth the factors for consideration in determining whether a plaintiff

should be awarded enhanced damages for a defendant's willful infringement. I will discuss each factor in turn.

**1. Whether the infringer deliberately copied the ideas or design of another**

The record is silent as to this factor. Krippelz argues that because Donnelly and Ford both possessed the patent, this factor should be neutral as to enhancement. However, Ford presented evidence that the accused products were independently developed by Ford suppliers, and that although Donnelly's attorneys knew about the Krippelz patent, Donnelly itself was unaware of it until Krippelz sued Ford. For this reason, Ford argues, this factor should weigh against the enhancement of damages. However, testimony that no one at Donnelly had knowledge of the Krippelz patent before the suit was not admitted. There is circumstantial evidence that Ford and Donnelly copied the puddle lamp design from the Krippelz patent but no direct evidence. This factor is neutral.

**2. Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed**

Krippelz relies on my finding that until April 2007, Ford had presented no meritorious defenses. Ford maintains that this factor is irrelevant under *In re Seagate*, in which the Court "abandon[ed] the affirmative duty of due care," and held that an infringer's state of mind is not relevant to the objective inquiry of willful infringement. 497 F.3d 1360, 1371 (Fed. Cir. 2007), but points to no authority for this proposition. Courts post-*Seagate* have continued to apply this factor in determining whether enhancement is appropriate. *See, e.g.., Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, No. 04-5172 (JAP), 2009 WL 512156, at *4 (D.N.J. Feb. 27, 2009); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 750 (D. Del. 2009). As Krippelz

9

notes, "[w]illfull infringers that conduct an investigation act less egregiously than those . . . that do not." I am not persuaded by Ford's argument, and see no reason why this factor should not be considered here.

Ford had actual knowledge of the Krippelz patent, and the Donnelly patent licensed by Ford refers to the Krippelz patent. Ford need not have conducted a full-blown investigation; it need only have looked at what was already before it. For this reason, this factor weighs against Ford and in favor of enhanced damages.

**3. The infringer's behavior as a party to the litigation**

Krippelz argues that Ford's conduct in the course of the litigation favors enhancement of damages. According to Krippelz, Ford (1) filed a summary judgment brief devoid of any claim construction and containing arguments that I found to be "transparently wrong;" (2) formulated non-infringement theories that failed to take into account this Court's and the Board's rejection of its claim construction of "beam of light"; (3) conducted flawed testing of a Ford Explorer puddle lamp which delayed the litigation; (4) engaged a technical expert to produce inadmissible computer simulations purporting to demonstrate non-infringement, causing Krippelz to expend significant resources; (5) dropped the Siegfried reference the night before trial; and (6) asserted against Krippelz's counsel a baseless charge of inequitable conduct, which was eventually dropped, but required Krippelz to retain additional trial counsel.

In response, Ford maintains that (1) claim construction need not be raised in a motion for summary judgment, and the brief was never even considered by the court; (2) Ford's non-infringement positions do not rise to the level of litigation misconduct, and Krippelz himself asked the court to clarify the claim construction shortly before trial; (3) Ford took every measure to expedite the testing process stalled by Krippelz; (4) Krippelz could have raised the issue of

inadmissibility of the computer simulations before expending more resources, and Krippelz's expert himself used the same techniques as Ford; (5) the Siegfried reference is only relevant to period 4, where the court found no willfulness, and it is common for parties to focus the issues as trial nears (just as Krippelz did by dropping three lamp designs after Ford moved for summary judgment); and (6) the inequitable defense is relevant only to period 4, it was vetted by the court, and again, parties commonly focus issues over time. Furthermore, Ford argues, Krippelz did not drop his "additional trial counsel" even after Ford dropped the inequitable defense, demonstrating that this counsel was retained to try the case, and not because of Ford's defense.

It is true that Ford's positions were inconsistent with the court's claim construction. And although Krippelz asked the court to clarify the claim construction shortly before trial, this request was not made because Krippelz felt the court's rulings to be unclear, but rather because Ford continued to reject the court's construction. Furthermore, the delay in resolving the question of which Ford lamps were infringing was a consequent of flawed testing procedures used by Ford. These considerations tip the scales against Ford and in favor of enhancement.[3]

---

[3] In his reply brief Krippelz raises the issue that Ford failed to comply with discovery obligations by failing to disclose the existence of potentially infringing products. Krippelz complains that it recently learned for the first time that three models - Ford Edge, Lincoln MKS, and Ford Flex - were sold with puddle lamps. It is clear from correspondence that Krippelz knew that the Edge was being marketed with puddle lamps. Krippelz argues that Ford misled him when he inquired as to the Edge and was told that it was not yet in production. According to Krippelz, Ford should have informed him when the Edge hit the market. Krippelz also maintains that Ford should have notified him when the Lincoln MKS and Ford Flex vehicles were first sold in summer of 2008, as these models were also offered with puddle lamps. While Krippelz may be right, these failures to notify do not rise to the level of concealment or indicate conscious misbehavior worthy of enhancement. Krippelz was aware that the Edge was being offered with puddle lamps, and since the vehicle was advertised and sold openly on the market, it does not appear that Ford was concealing anything, and it is not unreasonable that Ford would see no need to notify Krippelz that the Edge was on the market. As to the MKS and Flex, Ford acknowledges that it should have notified Krippelz about them, and notes that they slipped through the cracks as the parties prepared for trial. Because Ford offered to add the MKS and Flex puddle lamps to

Furthermore, I do not find Krippelz's remaining arguments persuasive. Krippelz could have sought to address the inadmissibility of the computer simulations before expending the resources it did. The Siegfried reference and inequitable defense, both of which were dropped, were avenues that Ford was entitled to explore. They do not necessitate the enhancement of damages.

**4. The defendant's size and financial condition**

Defendant's size and financial condition should be viewed both relative to the Plaintiff and also individually to ensure that enhanced damages would "not unduly prejudice the [defendant's] non-infringing business." *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F. Supp. 512, 533 (E.D. La. 1981); and *Read*, 970 F.2d at 827 ("[D]ouble damages [appropriate]. If defendant were the giant and plaintiff the small independent, I would make it treble....") (citing and quoting *St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309, 189 USPQ 514, 518 (D. Mass. 1976)). According to Krippelz, Ford is the giant in this case, and enhancement of damages would not significantly prejudice Ford's business, even in today's economic climate. It is true that Ford's problems are "symptomatic and structural, and will remain so regardless of whether Ford is required to pay treble damages" here, however, the addition of $40 million in enhanced damages will harm Ford's financial position even further. Although Ford has not taken any federal assistance, the reality is that 2008 was Ford's worst year in 105 years of operation. Krippelz cited this fact in support of its position that prejudgment interest should be calculated at prime plus one percent. Krippelz argued that Ford is a credit risk, has depleted its cash reserves, and serious questions have been raised with regard to its solvency.

---

the damages award, and there was no prejudice to Krippelz as a result of the omission, it does not weigh in favor of enhancement.

Ford's non-infringing business is already under threat, and imposing an additional $40 million will only make it worse. This factor is neutral.

**5. Closeness of the case**

The inquiry here is whether the question of willfulness was a close one. *Read*, 970 F.2d at 827. In my findings on the issue of Ford's willfulness, I declined to find Ford to be a willful infringer during period 4, as at that point, Ford "had some evidence of invalidity on which it could reasonably rely." I contrasted this period with periods 1-3, in which Ford "did not have even the faint justification for its conduct that it possessed in period four."

Ford argues that willfulness was a close question. It was six years after Krippelz sent the patent to Ford that Ford sold an infringing puddle lamp. The reexamination resulted in an independent finding of unpatentability. However, "initial rejection by the Patent and Trademark Office of original claims that later were confirmed on reexamination hardly justifies a good faith belief in the invalidity of the claims." *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939, 942 (Fed. Cir. 1991). The reexamination results alone did not provide Ford with evidence of invalidity sufficient to make willfulness a close question. This factor weighs against Ford and in favor of enhancement.

**6. Duration of the defendant's misconduct**

Ford had infringed Krippelz's patent for nearly twelve years. Krippelz argues that such a long duration of infringement strongly favors enhancement of damages. *See Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-467-JVS(RNBx), 2007 WL 2326838 at *3 (C.D. Cal. 2007) ("The length of [defendant's] infringement (approximately two years), coupled with the fact that infringement continued after [plaintiff] filed its suit, supports an increase in damages."). Ford

claims that Krippelz was responsible for five years of delay, and that Krippelz's "continually shifting infringement positions" made it difficult for Ford to know which designs infringed. Krippelz correctly notes that a patent holder presented with a claim of invalidity has the right to have the patent reexamined. The stay sought by Krippelz pending the reexamination did delay the proceedings for three years, however, even excluding this three-year delay, Ford infringed Krippelz's patent for almost nine years. This factor weighs in favor of enhancement.

### 7. Remedial action by the defendant

This factor looks to whether the defendant ceased the sale of the infringing product during the pendency of the litigation. *Read*, 970 F.2d at 827 (citing *Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F. Supp. 1420, 1439 (E.D. Mich.1987), aff'd without opinion, 862 F.2d 320 (Fed. Cir.1988), cert. denied, 490 U.S. 1021(1989)). Ford not only failed to cease its infringing activity but continued to add new infringing devices to its product lines during the course of the litigation. This factor weighs against Ford and in favor of enhancement.

### 8. Defendant's motivation for harm

The defendant's motivation for infringement may weigh against the enhancement of damages where the Defendant was influenced by such economic pressures as customer satisfaction. *Read*, 970 F.2d at 827 (citing and quoting *American Safety Table Co. v. Schreiber*, 415 F.2d 373, 379 (2d Cir.1969) cert. denied, 396 U.S. 1038 (1970)). Krippelz argues that Ford was under "no business survival imperative to add infringing puddle lamps to its vehicles," and that it was indifferent to Krippelz's patent rights.

Ford maintains that because it did not compete with Krippelz, and because Ford's infringement had no effect on Krippelz's ability to license his technology to others, Ford had neither the motivation nor the ability to harm Krippelz. *See Odetics, Inc. v. Storage Tech. Corp*,

14

14 F. Supp 2d 800, 804 (E.D. Va. 1998) (no evidence of harm where the inventor and defendant do not compete with one another). Although "the paramount determination . . . is the egregiousness of the defendant's conduct based on all the facts and circumstances[,]" *Electro Scientific Indus., Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1353 (Fed. Cir. 2001) (quoting Read, 970 F.2d at 826) (brackets omitted), this factor looks to marketplace conduct, not litigation conduct, which is explicitly covered by factor three. *Joyal Products*, 2009 WL 512156 at *8. As an examination of marketplace conduct, this factor is less significant where the parties are not competitors. *Id.* Because this is not the case here, this factor is neutral.

**9. Whether the defendant attempted to conceal its misconduct**

According to Krippelz, Ford attempted to keep Krippelz in the dark as to which of its vehicles had infringing puddle lamps by failing to produce puddle lamp samples promptly and keeping Krippelz informed in a timely manner of the addition of new puddle-lamp equipped vehicles. However, the puddle lamps at issue were and are publicly available. Ford is not accused of destroying records or covering up its activity. *See Read*, 970 F.2d at 927 (citing and quoting *Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183 (1st Cir. 1953) (enhancement of damages supported by findings "that the defendant had failed to preserve its records and had failed to cooperate as it should at the trial on the issue of damages.")). In fact, Ford contacted Krippelz toward the conclusion of the stay to alert him of the introduction of new vehicles with courtesy lamps. Although Krippelz may see this notice as untimely, there is little evidence of concealment, especially in light of Ford's affirmative act of notification. This factor is neutral.

**10. Trebled damages**

Krippelz argues that eight of the Read factors favor enhancement and that damages related to periods 1-3 should be trebled, resulting in an additional award to Krippelz of $42,034,800. However, of the nine Read factors, I have found that only five weigh in favor of enhancement, and the remaining are neutral. For this reason, I find doubled damages to be appropriate here. Because Ford's willfully infringing sales represent 91.38% of the total accused sales in this case, Krippelz is entitled to an additional $21,017,400, over and above the jury award of $23,000,000.

## III. CONCLUSION

For the foregoing reasons, I am awarding $11,685,957 in prejudgment interest and $44,017,400 in damages. I am also granting Krippelz's motion for costs. Pursuant to Local Rule 54.1, Krippelz may file his detailed bill of costs within 30 days after entry of judgment.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: November 18, 2009