**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACOB KRIPPELZ, SR.,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **CASE NO. 98 C 2361** |
| vs. | ) | |
| | ) | **HONORABLE JAMES B. ZAGEL** |
| **FORD MOTOR COMPANY**, | ) | |
| | ) | |
| *Defendant.* | ) | |

**FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING**
**ITS ALTERNATIVE MOTION FOR NEW TRIAL**



**TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES .................................................................................................. -iii-

I. INTRODUCTION ........................................................................................................ -1-

II. DISCUSSION ............................................................................................................... -1-

    A.    The Great Weight Of The Evidence Shows That Claim 2 Is Invalid .................. -1-

    B.    The Court Should Have Instructed The Jury That "adjacent" Means "close to" -1-

    C.    The Court Improperly Refused To Let Ford To Show The Jury The Opening Required By Claim 2 In The Bottom Of Its Accused Housings .......... -2-

    D.    The Court Should Have Instructed The Jury That "conical beam of light" In Claim 2 Means Diverging Light Directed Downwardly With Defined Sweep Range .................................................................................. -3-

    E.    The Court Erred By Construing "beam of light" At Trial To Exclude Light Directly From The Bulb ........................................... -3-

    F.    Ford Was Prejudiced Because The Court Did Not Give A Definitive Construction Of "conical beam of light" Until The Last Day Of Trial And Then Excluded Miazzo ............................................................... -4-

    G.    The Court Erred By Refusing To Consider Evidence Of Non-Infringement Based On The "LightTools" Computer Program .................. -6-

    H.    Ford Was Entitled To Cross Examine Krippelz's Expert About The Court's Construction Of The Word "conical" .................................. -7-

    I.    The Court Erred By Excluding From Evidence The File History And The Fact That The "unadjustable" Element Of Claim 2 Was The Only Novel Feature .... -7-

    J.    The Court Erred By Granting Summary Judgment Of Infringement Despite A Genuine Issues Of Material Fact .............................. -8-

    K.    Ford Was Prejudiced By Krippelz's Counsel's Arguments And By The Court's Statement To The Jury During Closing Argument ............ -8-

    L.    The Jury Should Have Been Instructed That The Burden Of Proving Anticipation Or Obviousness Is Reduced To A Preponderance With Respect To Prior Art That Was Never Presented To The PTO ................. -9-



**Page No.**

M. Ford Was Prejudiced By The Court's Comment To The Jury That It Believed Krippelz's Counsel Was "attempting" To "show a flawed methodology in the way" Ford's Expert "approached the analysis of the patents" During Closing Argument ...................................... -10-

N. The Court Erred By Instructing The Jury That It Should Consider "commercial success" In Deciding Validity Because Krippelz Offered No Evidence That Anyone Purchased A Ford Vehicle For The Courtesy Lamps Found To Be Infringing ............................................ -10-

O. The Court Should Have Construed "emergency warning light" To Require A Light Mounted On A Vehicle Used To Make The Presence Of The Vehicle Known To Drivers Of Other Vehicles, Excluding Lights Used Primarily For Entering And Exiting The Vehicle Or Walking To The Vehicle ................ -11-

P. The Court Erroneously Permitted Krippelz to Remove the Lens from Ford's Lamps To Find Infringement .......................... -12-

Q. The Jury Was Erroneously Permitted To Impose Damages Based On Factors Other Than The Incremental Novelty Of The "Unadjustable" Housing ........... -12-

R. It Was Error To Exclude Evidence Regarding The Value Of Krippelz's Alleged Invention ...................................... -13-

S. Ford Should Have Been Allowed To Tell The Jury That 50% Of Ford's Courtesy Lamp Designs Do Not Infringe ............................... -13-

III. CONCLUSION ............................................................................................................. -14-



# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*ArthroCare Corp. v. Smith & Nephew, Inc.*,
    406 F.3d 1365, 1374 (Fed. Cir. 2005) 1365 ................................................................. 5

*Ballard Medical Products v. Allegiance Healthcare Corp.*,
    268 F.3d 1352, 1358-59 (Fed. Cir. 2001) ...................................................................... 11

*Blackboard, Inc. v. Desire2Learn Inc.*,
    574 F.3d 1371, 1381 (Fed. Cir. 2009) ............................................................................ 5

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
    229 F.3d 1120, 1130 (Fed. Cir. 2000) .......................................................................... 10

*Carella v. Starlight Archery & Pro line Co.*,
    804 F.2d 135, 138 (Fed. Cir. 1986) ................................................................................ 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................ 1

*Fuesting v. Zimmer, Inc.*,
    448 F.3d 936, 940 (7th Cir. 2006) ................................................................................. 1

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398, 426 (2007) ............................................................................................... 9

*O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co.*,
    521 F.3d 1351, 1361 (Fed. Cir. 2008) ............................................................................ 1

*Ormoco Corp. v. Align Technology, Inc.*,
    463 F.3d 1299, 1311-12 (Fed. Cir. 2007) .................................................................... 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1317 (Fed. Cir. 2008) ............................................................................ 4

*Riemer v. Illinois Department of Transport*,
    148 F.3d 800, 806 (7th Cir. 1998) .................................................................................. 1



## I. INTRODUCTION

Ford asks the Court for a new trial on the issues of validity and damages.  A court may grant a new trial where the jury's verdict is tainted by trial error or is against the great weight of the evidence.  *Riemer v. Illinois Dept. of Transp.*, 148 F.3d 800, 806 (7th Cir. 1998). A new trial is also appropriate if the losing party suffers prejudice from evidentiary or other errors in the conduct of the proceedings.  *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 940 (7th Cir. 2006) ("the ability of the court of appeals to award a new trial where there is prejudicial evidentiary error is well-established and undisturbed by *Unitherm*.")  For the following reasons, the Court should grant Ford a new trial on invalidity.

For similar and additional reasons, the Court should also reconsider its summary judgment of infringement.  Summary judgment is proper only if there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Ford is entitled to at least a trial on infringement.

## II. DISCUSSION

**A.      The Great Weight Of The Evidence Shows That Claim 2 Is Invalid**

As detailed in Ford's JMOL Brief, the great weight of the evidence establishes that claim 2 is invalid based on DuBois alone, Miazzo alone, or DuBois and Miazzo combined. In addition, the excluded file history confirms that the only feature that distinguished Krippelz's invention was a "substantially unadjustable" housing — a feature that was present in both DuBois and Miazzo.  To avoid burdening the Court, Ford does not repeat those arguments here, but incorporates them by reference.  If the Court does not grant JMOL, it should order a new trial on these issues for the reasons stated there.

**B.      The Court Should Have Instructed The Jury That "adjacent" Means "close to"**

The Court has the responsibility in patent cases to construe the words of a claim when there is a dispute between the parties.  *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).



-1-

At trial, the parties disputed the meaning of the word "adjacent." Dr. Van Derlofske testified that the light shown in Figure 5 of the DuBois patent was adjacent the side window. (12/9/08 Tr. at 286.) Dr. Hansler, on the other hand, testified that he was unsure whether the location of the light met claim 2's "adjacent" requirement. (12/10/08 Tr. at 514.) Dr. Hansler's uncertainty suggests that he was unclear about the meaning of "adjacent." (*Id.*)

In its proposed jury instructions, Ford asked the Court to construe "adjacent" to mean "close to." (Dkt. #412, Ford Proposed Instr. No. 8.) This is the ordinary meaning of the term (*See* Section III. A. 1. of Ford's JMOL Brief) and Krippelz offered no contrary construction (Dkt. #412, Krippelz Proposed Instr. No. 8). Had the Court construed "adjacent" as "close to" as Ford requested, Dr. Hansler would have had to agree that the DuBois light in Fig. 5 is adjacent the side window.

Like Dr. Hansler, the jury could have been uncertain about the meaning of the word "adjacent." Had the Court instructed the jury, that uncertainty would have been eliminated. The jury's uncertainty over the meaning of "adjacent" likely led it to believe that DuBois did not anticipate claim 2. If the jury had been told that "adjacent" means "close to," a reasonable jury would have found that the DuBois lamp is close to a side window. Ford is entitled to a new trial on this basis.

## C. The Court Improperly Refused To Let Ford To Show The Jury The Opening Required By Claim 2 In The Bottom Of Its Accused Housings

Claim 2 expressly requires a "housing having an opening in the bottom thereof." ('903 patent, 3:26.) Before trial, the Court construed the term "opening" in claim 2 as requiring "something that is open; breach; aperture." Despite these facts, the Court refused to let Ford show the jury Ford's accused housings with the lenses removed, or argue that removal of the lenses affected the value of the puddle lamps. (Dkt. #399, p. 3; 12/8/08 Tr. at 22-23.)

Ford's puddle lamp housings plainly have no "opening" as required by the Court's construction until the lenses are removed. The jury should have been allowed to consider that fact when assessing damages. The jury likely would have reached a different



damage award had it been properly instructed on the housing opening limitation. For these reasons, Ford is entitled to a new trial.

D. **The Court Should Have Instructed The Jury That "conical beam of light" In Claim 2 Means Diverging Light Directed Downwardly With Defined Sweep Range**

Before trial, the Court construed the phrase "conical beam of light." According to the Court's construction, and the plain language of claim 2, a "conical beam of light" is diverging light (Dkt. #103, p. 4) that is directed downwardly (*id*.) with a defined sweep range (Dkt. #158, pp. 2, 3.) Ford asked the Court to so instruct the jury. (Dkt. #412, Ford Proposed Instr. No. 8.) The Court refused to give Ford's proposed instruction. Instead, the Court gave the jury a new construction of "beam of light," a construction that differed considerably from the construction the Court had announced in 2003 and 2004. (12/12/08 Tr. at 961.) The Court's end-of-trial construction was erroneous.

Had the Court maintained its pretrial construction of "conical beam of light," no reasonable jury could have found in favor of Krippelz regarding validity. It is undisputed that the DuBois patent shows diverging light, directed downwardly, with a defined sweep range. (12/10/08 Tr. (Hansler) at 533-34.) The "conical beam of light" construction proffered by Krippelz, and given by the Court, confused the jury and led it astray. Accordingly, Ford is entitled to a new trial on this ground.

In addition, the "beam of light" construction the Court finally settled upon in the jury instructions appears to be the Court's basis for granting summary judgment of infringement. That construction improperly decided factual issues about whether the "conical beam of light" directly impinges on the side of Ford's vehicles, which the jury should have decided under the proper construction of "conical beam of light." (Dkt. #103, p. 4; Dkt. #158, pp. 2, 3.) A trial on infringement is necessary under a proper construction.

E. **The Court Erred By Construing "beam of light" At Trial To Exclude Light Directly From The Bulb**

As Ford explained in its Opposition to Krippelz's Motion For Summary Judgment of Infringement, Krippelz told the PTO that light directly from the bulb was a beam of light.



-3-

(*See* Dkt #319, pp. 9-11.) In view of this clear PTO record, it was improper for the Court to instruct the jury that light directly from the bulb is **not** part of the beam of light. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2008) (*en banc*) ("the prosecution history provides evidence of how the PTO and the inventor understood the patent.") Ford suffered further prejudice because the Court did not announce that construction until the very end of trial (12/12/08 Tr. at 961), despite Ford's request for a definitive construction of "beam of light" before trial began (12/8/08 Tr. at 23-25). The Court's erroneous and belated instruction may have led the jury to conclude wrongly that the DuBois patent does not disclose a beam of light. For these reasons, Ford is entitled to a new trial on this issue.

Ford is also entitled to a trial on infringement because the Court apparently based its summary judgment of infringement on the conclusion that light directly from the bulb is not part of the beam of light. That determination improperly and erroneously decided a question of fact that the jury should have decided.

### F. Ford Was Prejudiced Because The Court Did Not Give A Definitive Construction Of "conical beam of light" Until The Last Day Of Trial And Then Excluded Miazzo

As noted above, in 2003 and 2004, the Court construed "conical beam of light" as diverging light that is downwardly directed with a defined sweep range. (Dkt #103, p. 4; Dkt # 158, pp. 2, 3.) Until the last day of trial, the Court never changed that construction. However, because the Court had granted summary judgment of infringement, Ford knew that the Court intended to apply a different, but unstated, construction. (12/8/08 Tr. at 23-25.) On the first day of trial, before opening statements, Ford asked the Court to provide a definitive construction of "conical beam of light." *Id*.

The Court denied Ford's request (*id*.), which severely prejudiced Ford's presentation of evidence. On the last day of trial, the Court announced a new construction of "conical beam of light" by adopting a modified version of Krippelz's proposed construction. By then, it was too late for Ford to present evidence directed to that new construction. Had the Court maintained its pretrial construction of "conical beam of light," it could not have excluded



the testimony by Dr. Van Derlofske regarding the Miazzo patent. As discussed in Section III. C. of Ford's JMOL Brief, Dr. Van Derlofske properly testified that Miazzo discloses diverging light, directed downwardly, with a defined sweep range. Accordingly, Ford is entitled to a new trial on this ground.

Even if the Court's new, end-of-trial construction of "conical beam of light" was proper, the Court should not have excluded the testimony of Dr. Van Derlofske, or the Miazzo patent. Dr. Van Derlofske's testimony was completely consistent with the Court's end-of-trial construction.

At the end of trial, the Court instructed the jury that a "beam of light" can be formed using a parabolic reflector. (12/12/08 Tr. at 961.) Dr. Van Derlofske showed the jury that Miazzo unequivocally teaches creating a conical beam of light using a parabolic reflector in the light source. (12/9/08 Tr. at 256-58.) Indeed, Miazzo expressly states that his light source produces a "beam of light." (*Id*. at 258; JX 5, p. 3.) The Court instructed the jury that "conical" means "diverging" (12/12/08 Tr. at 961), and Dr. Hansler testified that beams of light "always" diverge (12/10/08 Tr. at 537). Miazzo's "beam of light" was, necessarily, a "conical beam of light" under the Court's instruction. Thus, Dr. Van Derlofske's testimony was fully consistent with the Court's end-of-trial construction of "conical beam of light."

Furthermore, the Court should not have excluded the Miazzo patent. The Miazzo patent was an admitted exhibit (JX 5; 12/9/08 Tr. at 240). As noted above, it unequivocally teaches a conical "beam of light" made by the light source's parabolic reflector. (12/9/08 Tr. at 256-58.) The jury was entitled to decide whether Miazzo invalidates claim 2 even without testimony from Dr. Van Derlofske. *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1381 (Fed. Cir. 2009) ("it is not necessary to rely on the testimony of Desire2Learn's witness to conclude that claims 36-38 are invalid. Instead, once the claims are properly construed, the conclusion of anticipation is dictated by the testimony of Blackboard's own witnesses and the documentary evidence that was presented to the jury."); *ArthroCare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1374 (Fed. Cir. 2005) ("ArthroCare limits its argument to contesting the



-5-

veracity of Smith & Nephew's expert and disputing his conclusions regarding the presence of the electrical connector in the article. However, the article speaks for itself, and it clearly discloses such a connector."). Moreover, whether Miazzo discloses the creation of a conical beam by using a bulb and a reflector is a question of fact for the jury.

In any event, wholly apart from the dispute about the disclosure of a conical beam, the Miazzo reference included other elements of the claim that, when combined with DuBois, created an issue of fact under *KSR* as to whether Claim 2 of the '903 patent was invalid as obvious. For example, Miazzo discloses that his light is in the side view mirror housing, which is "adjacent" a side window – something that Krippelz claimed was missing from DuBois.

Because the Court erred in excluding Dr. Van Derlofske's testimony about the Miazzo patent and erred by excluding the Miazzo patent itself, Ford is entitled to a new trial.

G.  **The Court Erred By Refusing To Consider Evidence Of Non-Infringement Based On The "LightTools" Computer Program**

It was error for the Court to rule in Krippelz's favor on summary judgment of infringement and exclude evidence relevant to non-infringement at trial. Even under the Court's end-of trial claim construction, Ford presented expert evidence showing that its lamps produce a beam of light that directly impinges on the side of the vehicle, and therefore renders the lamps non-infringing. (Dkt #315-8, Van Derlofske Rebuttal Report; Dkt #319-18, Van Derlofske LightTools analyses.) The Court excluded Ford's ray-traces at summary judgment because they were drawn using a computer program, "LightTools," which was not available in 1989 when the patent was filed. The law, however, does not prohibit the use of well-established, modern technology to determine whether an accused device operates in the manner described by a patent's claims. Indeed, Krippelz's expert, Dr. Hansler also used computer generated ray-traces to form the bases for his opinions. (12/10/08 Tr. at 505, 552.) He stated that making ray traces by hand is "essentially the same" as using a computer program. (*Id*. at 552.) He agreed that the two are "interchangeable for purposes of this case." (*Id*. at 552-53.) Ford's LightTools evidence, at a minimum, creates a genuine issue of material fact necessitating a trial.



**H.     Ford Was Entitled To Cross Examine Krippelz's Expert
         About The Court's Construction Of The Word "conical"**

Throughout this case, the Court's unwavering construction of the term "conical" was "diverging." (Dkt #103, p. 4; 12/12/08 Tr. at 961.) It is undisputed that the light in the DuBois patent was diverging, and, therefore, conical. (JX 6, DuBois patent Figs. 1-15; 12/10/08 (Hansler) Tr. at 543.) Nonetheless, Dr. Hansler, on cross-examination, adopted a far narrower definition of "conical": The shape must be "a cone shape." (12/9/08 Tr. at 555.) When Ford's counsel tried to cross-examine Dr. Hansler by showing him the Court's construction, the Court refused to allow that cross-examination. (12/10/08 Tr. at 532-33.)

Because the Court allowed that testimony, and refused to allow Ford's counsel to cross-examine Dr. Hansler on the proper construction, the jury was likely misled or confused. Ford is entitled to a new trial on this issue.

**I.     The Court Erred By Excluding From Evidence The File History And The Fact
         That The "unadjustable" Element Of Claim 2 Was The Only Novel Feature**

At trial, the original file history was a <u>joint</u> exhibit <u>admitted</u> by the Court into evidence. (JX 1; 12/9/08 Tr. at 235.) Ford's counsel began to cross-examine Mr. Krippelz about the file history. (12/10/08 Tr. at 410-413.) When it became clear that Mr. Krippelz had no knowledge of the file history, the Court stated that Ford's counsel could read portions of the file history into the record. (*Id*. at 413.) Later, however, the Court prohibited Ford's counsel from doing so. (*Id*. at 427-46.)

The history of claim 2 in the Patent Office shows, unequivocally, that Krippelz obtained claim 2 only after stating in claim 2 that the housing was "substantially unadjustable." (JX 1; 12/10/08 Tr. at 450-51.) Prior to adding that limitation, the PTO repeatedly rejected Krippelz's efforts to get any claims allowed. *Id.*

In addition, during deliberation, the Court gave the jury the admitted exhibits but withheld the file history. (12/11/08 Tr. at 621-22.) Thus, the Court not only prevented Ford from telling the jury that the PTO allowed claim 2 solely because of the "substantially



-7-

unadjustable" limitation of claim 2, but the Court also prevented the jury from discovering that fact on its own. For these reasons, Ford is entitled to a new trial.

**J.     The Court Erred By Granting Summary Judgment
        Of Infringement Despite A Genuine Issues Of Material Fact**

Ford presented substantial summary judgment evidence to show that the lamps in five of its vehicle lines did not meet the substantially unadjustable element. (Dkt #316, pp. 7-9.) Rather, each of those lamps could be adjusted by the operator. (*Id*.) The Court erroneously decided that these lamps were substantially unadjustable — a fact question that should have been decided by the jury. A trial on non-infringement is therefore required for the following vehicle lines with adjustable lamps: (1) 1998-2000 Ford Explorer/Mercury Mountaineer; (2) Ford 500/Mercury Montego; (3) Ford Freestyle; (4) Ford Expedition; and (5) Ford F-150/Lincoln Mark LT.

In addition, Dr. Hansler testified that a parabolic reflector, for this lawsuit, must be "a parabolic mirror of revolution." (12/10/08 Tr. at 526.) This means that the mirror must have "generally the same shape all the way around." (*Id.* at 527.) In his 2008 summary judgment motion, Krippelz offered no evidence that Ford's accused mirrors have "generally the same shape all the way around." To the contrary, the record is undisputed that Ford's reflectors do <u>not</u> have "generally the same shape all the way around." (*See, e.g.*, Dkt. #315-1, App. 2 (photos in and annotations on Ex. J-3, K-3, N-3).) Ford is entitled to a trial on infringement.

**K.     Ford Was Prejudiced By Krippelz's Counsel's Arguments
        And By The Court's Statement To The Jury During Closing Argument**

In both his opening statement and closing argument, Krippelz's counsel emphasized to the jury that Ford had a high burden of proof because Patent Office "experts" had granted Krippelz a patent. For example, in his opening, Krippelz's counsel stated that Ford had a higher burden of proof because patent examiners "trained not only in the law of patents but also trained in the specific technology of the patents that they're examining" had approved the patent. (12/8/08 Tr. at 183.) In closing, Krippelz's counsel told the jury that Ford had a "clear and convincing evidence" burden of proof because "the experts in the Patent Office are



presumed to know what they're doing and they're presumed to get it right." (12/12/08 Tr. at 891.)

After Ford tried to counter those statements by pointing out that Ford had not participated in the patent application process, the Court instructed the jury that it "may not consider or give any weight to the fact that Ford did not participate in the Patent Office hearings." (12/12/08 Tr. at 963.) Krippelz's arguments and the Court's instruction severely prejudiced Ford. The Court allowed Krippelz allowed to make the fallacious and prejudicial arguments that Ford had a high proof burden because "trained" Patent Office "experts" had granted Krippelz a patent. The Court's instruction multiplied the prejudice to Ford. Because Ford was unduly prejudiced, it is entitled to a new trial.

**L.    The Jury Should Have Been Instructed That The Burden Of Proving Anticipation Or Obviousness Is Reduced To A Preponderance With Respect To Prior Art That Was Never Presented To The PTO**

In *KSR*, the Supreme Court questioned the presumption of validity in favor of the patent owner when the PTO has never considered the prior art at issue. *KSR Int'l*, 550 U.S. at 426. The Federal Circuit's "clear and convincing evidence" burden of proof derives from that presumption of validity. *Carella v. Starlight Archery & Pro line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986). Because the weight afforded the presumption of validity should be lower when the PTO has not considered the prior art, the defendant's burden of proof should be preponderance of evidence, not clear and convincing evidence. *KSR Int'l*, 550 U.S. at 426. Ford asked for such an instruction (Dkt #412, Ford Proposed Instr. No. 9), but the Court refused to give that instruction (12/11/08 Tr. at 848.)

Here, the PTO never considered DuBois (or Miazzo). Therefore, the jury should have been instructed that Ford's burden of proof was a preponderance of the evidence, not clear and convincing evidence. Because the Court incorrectly instructed the jury on this point, Ford is entitled to a new trial.



**M.  Ford Was Prejudiced By The Court's Comment To The Jury That It Believed Krippelz's Counsel Was "attempting" To "show a flawed methodology in the way" Ford's Expert "approached the analysis of the patents" During Closing Argument**

In closing argument, Krippelz's counsel criticized Dr. Van Derlofske's analysis of the Miazzo patent (12/12/08 Tr. at 904), despite the Miazzo patent's exclusion from evidence. His criticism continued even after Ford's counsel objected. (*Id*. at 904-05.)

The statements by Krippelz's counsel prejudiced Ford. First, Dr. Van Derlofske's analysis of the Miazzo patent was irrelevant because the Miazzo patent was no longer at issue. Second, Krippelz's counsel wrongly criticized Dr. Van Derlofske because Dr. Van Derlofske was merely showing why one skilled in the art would combine DuBois and Miazzo.

The Court then compounded the prejudice to Ford by telling the jury that Krippelz's counsel was "attempting" to "show a flawed methodology in the way" Ford's expert "approached the analysis of the patents." (12/12/08 Tr. at 904.) The Court's comment plainly affected the jury's view of Ford's expert. Because Ford was severely prejudiced, it is entitled to a new trial.

**N.  The Court Erred By Instructing The Jury That It Should Consider "commercial success" In Deciding Validity Because Krippelz Offered No Evidence That Anyone Purchased A Ford Vehicle For The Courtesy Lamps Found To Be Infringing**

To show commercial success with respect to validity, a party must show a link or "nexus" between the patented invention and the sale of the product used as the basis for commercial success. *Ormoco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2007). In addition, the patent owner must show that "the marketed product embodies the claimed features, and is coextensive with them." *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

At trial, Krippelz made no showing that the accused puddle lamps, not Ford's marketing or other features of Ford's vehicles, drove customers to purchase Ford's vehicles. Ford's vehicles are plainly not "coextensive" with Krippelz's emergency light. Accordingly, the Court erred when it instructed the jury on commercial success over Ford's objection. (12/11/08 Tr. at 840-41.)



The Court's instruction on commercial success – when Krippelz had no evidence of commercial success – likely confused the jury. The jury could have concluded, wrongly, that claim 2 was not obvious based on commercial success. (*See* 12/12/08 Tr. at 910.) For this reason, Ford is entitled to a new trial.

**O.   The Court Should Have Construed "emergency warning light" To Require A Light Mounted On A Vehicle Used To Make The Presence Of The Vehicle Known To Drivers Of Other Vehicles, Excluding Lights Used Primarily For Entering And Exiting The Vehicle Or Walking To The Vehicle**

As explained in detail in Ford's 2008 Opposition to Krippelz's Motion For Summary Judgment of Infringement (Dkt #319, pp. 4-6), Krippelz told the PTO that his invention "is not used for [the] purpose" of facilitating "ingress and egress from the vehicle or walking [to] the vehicle." (Dkt #319-7, Prosecution History (5/29/90 Amendment) at 31-32.) This express disclaimer of claim scope binds Krippelz. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358-59 (Fed. Cir. 2001). Despite this disclaimer of claim scope, the Court entered summary judgment of infringement and refused to give Ford's proposed instruction that Krippelz's "emergency warning light" does not cover lights used primarily for entering and exiting the vehicle or walking to the vehicle. (Dkt #412, Ford's Proposed Instr. No. 8.)

Ford proved that its lamps were designed with a lock-out system that prevented them from being used for anything other than entering and exiting the vehicle or walking to the vehicle. (*See, e.g.*, 12/9/08 Tr. at 221-23; 12/11/08 Tr. at 720-21, 741.) Because a proper construction of "emergency warning light" excludes Ford's accused lamps, Ford was entitled to judgment of non-infringement. At a minimum, there is a genuine issue of material fact on this issue, requiring a trial on infringement.

Moreover, by failing to give a proper "emergency warning light" instruction, the Court permitted the jury to assess damages without considering the fact that Ford's puddle lamps are used for a purpose completely different from the purpose of Krippelz's invention. This would likely have affected the jury's valuation of Ford's lights, which, unlike Krippelz's light,



-11-

can never be used while driving. (*Id*.) Because the jury was not properly instructed, Ford is entitled to a new trial.

**P.      The Court Erroneously Permitted Krippelz to
        Remove the Lens from Ford's Lamps To Find Infringement**

It is undisputed that the lens on Ford's accused puddle lamps changes the light distribution. Krippelz established infringement <u>only</u> with the lens removed from the puddle lamps. In his 2008 summary judgment motion, which the Court granted, Krippelz submitted no evidence that Ford's lamps, *with lenses on*, infringed his patent. (Dkt. #313.) It is undisputed, however, that Ford makes and sells puddle lamps only with lenses on. Krippelz presented no evidence that anyone ever removed the lens of a Ford puddle lamp, other than in this lawsuit.

The Court erroneously granted summary judgment of infringement based on evidence of the operation of Ford's lamps with the lens off. Because it was error to remove the lens, a trial on infringement is required to assess the question of infringement with the lens on.

Similarly, at trial on damages, the Court refused to allow any evidence from Ford that the lights with the lens off have no value. (Dkt #399, p. 3; 12/8/08 Tr. at 21-23.) Had the jury known that the lens-less lamp found to infringe was not the lamp Ford made and sold, it likely would have reached a different damages award. For these reasons, Ford is entitled to a new trial on damages.

**Q.      The Jury Was Erroneously Permitted To Impose Damages Based On Factors
        Other Than The Incremental Novelty Of The "Unadjustable" Housing**

As discussed in Section II. I., *supra*, Krippelz was able to obtain a patent only after adding a limitation that the housing is "substantially unadjustable." Because the Court prevented Ford's counsel from telling the jury this fact, the jury never knew that the novelty of claim 2 relates to the substantially unadjustable housing, not to the puddle lamp itself. Had the jury known this fact, it likely would have resulted in a different damages award. For this reason, Ford is entitled to a new trial.



**R.   It Was Error To Exclude Evidence Regarding
The Value Of Krippelz's Alleged Invention**

Ford made offers of proof intending to show that Krippelz's invention has no value to Ford. For example, Ford was prepared to show that non-accused puddle lamps – puddle lamps for which Krippelz has given Ford a covenant not to sue – have the same value to Ford's customers as the accused puddle lamps. (Dkt #399, pp. 1-2.) This would have enabled the jury to know that the infringing puddle lamps have no greater value than non-infringing puddle lamps.

Ford was also prepared to show, and made an offer of proof, that the "beam of light" required by Krippelz's patent was useless to Ford. (Dkt #414.) These videos and still photos would have enabled the jury to see that the infringing "beam of light" is nearly invisible – even in the dark – and completely useless in the accused Ford products. Ford could have informed the jury that the only useful light is the ***non-beam*** light — light that is not part of Krippelz's invention. Had the jury been allowed to learn and see this evidence, it likely would have reached a different damages award. Ford is therefore entitled to a new trial.

**S.   Ford Should Have Been Allowed To Tell The Jury That
50% Of Ford's Courtesy Lamp Designs Do Not Infringe**

Krippelz gave Ford a covenant not to sue with respect to half the puddle lamp designs that Ford makes and sells, meaning that Ford was free to sell those designs without liability to Krippelz. (Dkt #386-5.) But the Court excluded this evidence from the jury. (Dkt #399, pp. 1-2.)

Ford was prepared to show the jury that Krippelz's valuation of Ford's accused courtesy lamp designs – $50/vehicle (12/10/08 Tr. at 582-83) – is the same for Ford's *non-accused* courtesy lamp designs. Had the Court permitted this evidence, the jury would have known that the allegedly infringing designs add no value to Ford's vehicles. Instead, because the Court excluded this evidence, it allowed Krippelz to say, falsely, that his invention added $50 of value to Ford's vehicles.



-13-

Had the jury known these facts, it likely would have arrived at a different damages award. Ford is entitled to a new trial on this basis.

### III. CONCLUSION

For the reasons set forth above, if the Court does not grant judgment as a matter of law, it should grant the alternative relief of a new trial.

Respectfully submitted,

By: /s/ Thomas A. Lewry
THOMAS A. LEWRY
FRANK A. ANGILERI
JOHN S. Le ROY
DANIEL M. STOCK
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, Michigan 48075-1238
Tel: (248) 358-4400; Fax: (248) 358-3351
Email: tlewry@brookskushman.com
fangileri@brookskushman.com
jleroy@brookskushman.com
dstock@brookskushman.com

*Attorneys for Defendant*

Dated: **March 5, 2010**

**LOCAL COUNSEL:**

ALFRED M. SWANSON, JR.
GREENE & LETTS
111 West Washington, Suite 1650
Chicago, Illinois 60602
Tel: (312) 346-1100
Fax: (312) 346-4571



## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on **March 5, 2010**, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Illinois using the CM/ECF System which will send notification to all registered participants of the CM/ECF System as listed on the Court's Notice of Electronic Filing.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System:

Mark Edward Ferguson
Bartlit Beck Herman Palenchar & Scott
54 West Hubbard Street, Suite 300
Chicago, IL 60610

        Respectfully submitted,

        By:  /s/ Thomas A. Lewry
            THOMAS A. LEWRY
            FRANK A. ANGILERI
            JOHN S. Le ROY
            DANIEL M. STOCK
            **BROOKS KUSHMAN P.C.**
            1000 Town Center, 22nd Floor
            Southfield, Michigan 48075-1238

