# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JACOB KRIPPELZ, SR.,

      Plaintiff,

          v.

FORD MOTOR COMPANY,

      Defendant.

No. 98 CV 2361
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.  BACKGROUND

This is a patent infringement case involving "puddle lamps," devices installed on vehicles to illuminate the ground beside the automobile.  Plaintiff Jacob Krippelz, Sr. ("Krippelz" or "Plaintiff"), the inventor and owner of U.S. Patent No. 5,017,903 (the "'903 patent"), sued Defendant Ford Motor Company ("Ford" or "Defendant") for infringement of claim 2 of the patent.  In December 2008, a jury found in favor of Plaintiff, awarding him $23,000,000.00 in damages.  After a bench trial on the issue, I found Ford's infringement to be willful and awarded Plaintiff an additional $21,017,400.00 in damages.  Plaintiff was awarded an additional $11,685, 957.00 in prejudgment interest.  Ford now moved for judgment as a matter of law, or, in the alternative, a new trial.  For the following reasons, Ford's motions are denied.

## II.  LEGAL STANDARDS

### A.  Judgment As A Matter Of Law

Pursuant to Federal Rule of Civil Procedure 50(a)(1), judgment as a matter of law ("JMOL") may be granted against a prevailing party if, after trial, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

issue[.]"  JMOL is "a procedural issue not unique to patent law," and governed by "the law of the regional circuit where the appeal from the district court normally would lie." *Z4 Technologies, Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1346 (Fed. Cir. 2007) (citation and quotations omitted).

In the Seventh Circuit, JMOL "should be granted only where there can be but one conclusion from the evidence." *McRoberts Software, Inc. v. Media 100*, Inc., 329 F.3d 557, 564 (7th Cir. 2003) (citation omitted).  I must consider the evidence in the light most favorable to the prevailing party, and should reverse the verdict "only if there is no legally sufficient evidentiary basis to support [it]." *Id.*  In my analysis, I must be "careful to avoid supplanting [my] view of the credibility or the weight of evidence for that ... of the jury." *Id.* (citation and quotations omitted).

## B.  Patent Invalidity

A patent is entitled to a presumption of validity.  35 U.S.C. § 282.  This presumption may be overcome with clear and convincing evidence of the patent's invalidity. *Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999).  A patent is invalid if it is anticipated by another invention.  35 U.S.C. 102(b).  Anticipation "requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention." *Apple Computer, Inc. v. Articulate Systems, Inc*., 234 F.3d 14, 20 (Fed. Cir. 2000) (citation omitted).  Anticipation is a question of fact. *Id.*   Anticipation is measured by the knowledge of those skilled in the art. *In re Baxter Travenol Labs*., 952 F.2d 388, 390 (Fed. Cir. 1991) (for anticipation, the "dispositive question" is "whether one skilled in the art would reasonably understand or infer" that a reference teaches or discloses all of the elements of the claimed invention).

A patent is also invalid if it is rendered obvious by prior art. 35 U.S.C. § 103(a). A prior art patent or combination of patents renders a claim obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Ball Aerosol & Specialty Container, Inc. V. Limited Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009) (quoting 35 U.S.C. 103(a)). In conducting an obviousness inquiry:

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.* at 418. Obviousness is a question of law. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). This question of law, however, is premised on underlying factual determinations. *Dennison Mfg. v. Panduit Corp.*, 475 U.S. 809, 810-11 (1986).

## C. Motion For A New Trial

Rule 59 of the Federal Rules of Civil Procedure allows a court to order a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Whether to grant a new trial is a procedural issue not unique to patent law and is therefore governed by regional circuit law. *z4 Technologies, Inc. v.*

*Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). In deciding a motion for a new trial under Rule 59, the "district court must determine whether the verdict is against the weight of evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Westchester Fire Ins. Co. v. General Star Indem. Co.*, 183 F.3d 578, 582 (7th Cir.1999) (citations and internal quotation marks omitted).

There are several possible grounds for setting aside a verdict and granting a new trial. A verdict will be set aside as "contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *BP Amoco Chem. Co. v. Flint Hills Resources, LLC*, 697 F. Supp. 2d 1001, 1015 (N.D. Ill. 2010) (citation and internal quotation marks omitted). Federal courts will not "set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury." *Id.* (citation and internal quotation marks omitted).

To obtain a new trial based on an evidentiary ruling, the movant must show that: (1) a timely objection or motion to strike appears in the record, stating specific grounds for the objection if the specific ground is not apparent; (2) the erroneous ruling prejudiced the movant's substantial rights. FED. R. EVID. 103(a). Because evidentiary rulings are reviewed for abuse of discretion, a judge's erroneous ruling may be deemed harmless if the outcome of the trial would have been unchanged. *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 942 (7th Cir. 2001).

A party may also move for a new trial based on an erroneous jury instruction. The Federal Circuit has noted that "[t]here may be some question as to whether [the Federal Circuit]

4

reviews jury instructions relating to patent law under [its] own law or regional circuit law." *Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1368 n.13 (Fed. Cir. 2009). The Federal Circuit reviews "the legal sufficiency of jury instructions on an issue of patent law without deference to the district court." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697 (Fed. Cir. 2008) (quotation marks omitted). The court "reviews jury instructions in their entirety and only orders a new trial when errors in the instructions as a whole clearly mislead the jury." *Id.* (quotation marks omitted). "[A] party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311-12 (Fed. Cir. 2005) (quotation marks omitted).

In the Seventh Circuit, "A district court has substantial discretion to formulate jury instructions so long as they represent a complete and correct statement of the law." *Warfield v. City of Chicago*, 679 F. Supp. 2d 876, 884 (N.D. Ill. 2010) (citations, internal quotation marks, and brackets omitted). "In order to receive a new trial based on erroneous instructions, a defendant must show both that the instruction did not adequately state the law and that the error was prejudicial to him because the jury was likely to be confused or misled." *Id.* (citations, internal quotation marks, and brackets omitted); *see also Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007) (reversal is justified "only if the instruction misguides the jury so much that a litigant is prejudiced") (citation omitted). In considering whether the movant has been prejudiced, courts must examine the instructions as a whole, all of the evidence and arguments presented,

and whether the jury was misinformed on the applicable law. *Warfield*, 679 F. Supp. 2d at 884

(citation omitted).

## D. Motion for Reconsideration

"As the Seventh Circuit has repeatedly observed, '[m]otions for reconsideration serve a

limited function: to correct manifest errors of law or fact or to present newly discovered

evidence.'" *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 924 (N.D. Ill. 2009) (quoting

*Caisse Nationale de Credit Agricole v. CBI Industries, Inc*., 90 F.3d 1264, 1269 (7th Cir. 1996)).

"[A] reconsideration motion is appropriate where: (1) the court has patently misunderstood a

party; (2) the court has made a decision outside the adversarial issues presented to the court by

the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has

been a controlling or significant change in the law since the submission of the issue to the court;

or (5) there has been a controlling or significant change in the facts since the submission of the

issue to the court." *Hamilton v. O'Connor Chevrolet, Inc*., 2005 WL 1189589, at *3 (N.D. Ill.

Mar. 23, 2005) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191

(7th Cir. 1990)).

## III.  DISCUSSION

## A. Judgment as a Matter of Law

## 1. The DuBois Patent

## a. Anticipation

Ford argues that the DuBois patent anticipates the '903 patent.  Claim 2 of the '903

patent reads:

> An emergency warning light for an automotive vehicle having a window on one
> side thereof, comprising in combination

6

> a housing mounted in a fixed, substantially unadjustable position on said vehicle adjacent to said window,
>
> said housing having an opening in the bottom thereof,
>
> a source of light mounted within said housing for directing a conical beam of light downwardly through said opening along said side of said vehicle below said window so as to be visible from in front of and from behind said vehicle, and
>
> said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle.

(U.S. Patent 5,017,903 ("'903 patent") at col. 3, line 19-col. 4, line 3.).

In order to prove that the DuBois patent anticipated the '903 patent, Ford was required to show that the DuBois patent contains each limitation of claim 2. At trial, the parties disputed whether the DuBois patent discloses the "adjacent" and "conical beam of light" limitations. Ford maintains that it proved by clear and convincing evidence that DuBois discloses both of these limitations.

First, Ford argues that DuBois' drawings show lamps placed in many locations on different kinds of vehicles. According to Ford, Figure 5 of the patent shows a light "adjacent" to the side window of a vehicle, and Ford's expert, Dr. John Van Derlofske, testified at trial that this is just what the DuBois patent discloses. Krippelz' expert, Dr. Richard Hansler, testified that while in one illustrated position the device "might be" adjacent, "it certainly is not clearly adjacent to a side window." Dr. Hansler also testified that "[t]here is no mention of mounting a device adjacent to a side window" in the written text of the DuBois patent. The patent does not disclose the proper placement of the light. Based on this evidence, a jury could reasonably find that DuBois did not disclose a "housing . . . adjacent to . . . [a] window."

7

Second, Ford argues that DuBois discloses a "conical beam of light." At trial, I instructed the jury that a "conical beam of light" is "a beam of light that diverges," and that a "beam of light" is "light that both is directed and has a defined sweep range." In support of its argument, Ford points to Dr. Hansler's testimony on cross examination that: (1) DuBois shows "a very defined sweep range;" (2) at least some of the light from the reflector would be directed downward onto the ground; and (3) the light diverges. DuBois also states that a "headlight" may be used as the light source, and Dr. Hansler testified that "[a] headlight typically makes a beam of light[.]" Ford argues that this represents clear and convincing evidence that DuBois teaches a conical beam of light. Furthermore, the Court ruled that elliptical reflectors may form conical beams of light. One drawing included in the DuBois patent, Figure 17, did not have a parabolic reflector, but Krippelz offered no proof that the reflector in Figure 17 is not elliptical. Dr. Hansler admitted that the shape of the DuBois reflector could be either parabolic or elliptical. Therefore, Ford claims, no evidence was presented that the drawing does not depict a conical beam of light.

These arguments are problematic for several reasons. First, Ford focuses on excerpts of Dr. Hansler's testimony in which he was asked on cross examination, to divide the claim construction into individual parts and apply each part, rather than applying the claim as a whole. Significantly, Ford did not include the term "conical," but substituted for it entirely the word "diverging." On direct and re-direct examination, Dr. Hansler indicated that when the claim construction is applied as a whole, DuBois does not disclose a conical beam of light. On page 503 of the trial transcript, Dr. Hansler explains that a conical beam of light is one that is axially symmetrical. In his testimony, Dr. Van Derlofske explained that "[a]lmost any beam that would

8

be made in the real world would be a conical beam[.]" Transcript at 257. He testified that a cone can be any shape and may be asymmetrical. Transcript at 258. According to Dr. Van Derlofske, conical means diverging and only diverging. On more than one occasion during his testimony, Dr. Hansler testified that DuBois does not teach a conical beam of light. The ray trace he conducted shows that the rays pictured are "simply a scattering of rays" that do not meet the requirements of a conical beam of light in that they were not "directed [and] diverging with limited sweep range[.]"[1] The patent makes no mention of a "beam of light" or a "conical beam."

In describing how a flashlight produces a conical beam of light, Dr. Hansler spoke of axial symmetry (Transcript at 503) and characterizes a conical beam of light as "light that is both directed and converging and with a limited sweep range." (Transcript at 506).

All of this is consistent with my construction of the patent. On cross examination, Dr. Hansler was referred to the premise that "the Court has said that conical beam of light is a beam of light that diverges." He responded by saying that "my belief is that the definition of a conical beam implies that the shape is, in fact, conical or a cone shape . . . which means that the cross-section of such a beam would, in fact, be neither a circle or ellipse. And for it to be a rectangle is

---

[1] Ford takes issue with the Dr. Hansler's ray trace analysis of Figure 17, and argues that it should have been excluded. Ford has repeated this argument on other occasions, based on case law that prohibits the use of precise dimensions of a patent figure to construe that patent's claims. *See Hockerson -Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000). Ford also cites *GO Medical Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1271 (Fed. Cir. 2006) where the Court found that figure dimensions are not disclosures for the purpose of the best mode requirement. Here, in the absence of any textual indication that Figure 17 discloses a parabolic reflector, Dr. Hansler used the drawing to look for any graphical indication. As Krippelz correctly points out, this is a question of shape, not size, and Dr. Hansler's analysis does not violate the prohibitions articulated in the aforementioned cases.

9

not possible. And, therefore, that's one of the items of evidence that I looked at when looking at the DuBois patent to conclude that it does not produce a conical beam, and that's part of the reasoning for what we have said about it."

I would not necessarily conclude that, in context, Dr. Hansler concluded that DuBois did not produce a conical beam (the cross-section of the beam being neither ellipse nor circle) and , for this reason, and others, he reached his conclusion about DuBois. But if I assume he did so, then the most that can be said is that his answers on cross were inconsistent with his answers on direct and re-direct which were fully in concord with the claim construction. A fact finder is free to determine which of two inconsistent answers is reliable (or that neither is). The trier of fact credited the direct and redirect testimony and its decision is to be accepted.

Even if this particular drawing does not depict a conical beam of light, Ford argues it may still prevail since DuBois notes that the figure in question is merely an "example," and the light may be "the image of a headlight[.]" Dr. Hansler testified that "[a] headlight typically makes a beam of light." But Dr. Hansler also testified that such a beam would only be wide enough "in some case" to suit DuBois' purpose, which is to light a wide area of pavement alongside the vehicle where an approaching vehicle must pass. Dr. Hansler explained that using a beam to illuminate such a wide area would be hazardous to passing drivers, and that a conical beam of light would generally be too small to illuminate such an area. Whether a beam generated by a headlight could light an area this large would depend on the distance between the light source and the ground. From this testimony, a rational jury could have concluded that the passing mention of a headlight in the long list of examples is not clear and convincing evidence that DuBois discloses a beam of light as required in claim 2 of the '903 patent.

10

Ford next argues that "DuBois teaches using reflectors and lenses to form the light[,]" pointing to the sentence:

> The present invention has as its object a system of lamps and optical devices such as reflectors, screens or even lenses equipping any kind of vehicle, whether automobile, tractor or towed vehicle, the purpose of which is to light, at night, that portion of the pavement extending along the side of the vehicle on the side where an approaching vehicle must pass.

Dr. Hansler testified that a person skilled in the art knows how to use lenses and reflectors to form conical beams of light. But Dr. Hansler also testified that there are many different types of lenses, and that some focus light and others spread it out. According to Dr. Hansler, using a lense to create a conical beam of light "probably wouldn't be a very effective way to accomplish the purpose of DuBois." A reasonable finder of fact could have agreed that the DuBois patent does not disclose a beam of light, but rather, in light of the stated purpose, actually teaches away from using a beam.

In further support, Ford argues that because "Krippelz offered no proof that Fig. 17's reflector is not elliptical," a reasonable finder of fact must find that DuBois discloses a conical beam of light. Ford relies on the court's ruling that elliptical reflectors form conical beams, and on Dr. Hansler's testimony that the shape of the DuBois reflector could be either parabolic or elliptical. Dr. Hansler testified only as to whether the reflector depicted in Fig. 17 was parabolic, not whether it was elliptical. Therefore, Ford contends, because "Krippelz had no evidence that Fig. 17 does not produce a conical beam of light[,]" there is no evidence to support a finding that Fig. 17 does not disclose a conical beam of light. But this shifts the burden of proof to Krippelz, who has no obligation to disprove that Figure 17 discloses a conical beam. Moreover, the ray trace conducted by Dr. Hansler, and his testimony that using a beam would be inconsistent with DuBois' purpose support the assertion that Figure 17 does not disclose a conical beam.

11

For the foregoing reasons, I find that the there was sufficient evidence for a rational finder of fact to find that Ford did not meet its burden to prove by clear and convincing evidence that DuBois disclosed both (1) a "housing . . . adjacent to . . . [a] window" and (2) a "conical beam of light."

**b. Obviousness**

Ford also argues that the DuBois patent obviates claim 2 of the '903 patent. In order to prove this, Ford was required to show at trial that it would have been obvious to a person of ordinary skill in the art to place the light of the DuBois patent adjacent to a side window, or to use a light source or optical devise to generate a conical beam of light. Ford argues for obviousness relying on *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 727 (Fed. Cir. 2002), where the Court explained that "[O]bviousness does not require the prior art to reach expressly each limitation exactly. Rather, obviousness may render a claimed invention invalid where the record contains a suggestion or motivation to modify the prior art teaching to obtain the claimed invention." Ford maintains that a lighting designer of ordinary skill would have looked at the DuBois patent and found it obvious to put the light adjacent a side window. The fact that the device "might be" adjacent to a side window, as Dr. Hansler testified, is enough to render it obvious. Additionally, DuBois expressly teaches using a headlight as a light source, and "plainly suggests" a conical beam of light. DuBois also teaches using optical devices and recessed light, both of which may result in a conical beam. Krippelz maintains that DuBois teaches away and does not render claim 2 obvious.

In *KSR*, the Court left undisturbed the well-established principle that "when prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." 550 U.S. at 416 (citing *U.S. v. Adams*, 383

U.S. 39, 51-52 (1966)). "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant . . . [or] if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (citation and internal quotation marks omitted); *see also Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 885 (Fed. Cir. 1998). It is a "useful general rule that references that teach away cannot serve to create a prima facie case of obviousness." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001) (citation and internal quotations omitted). "If references taken in combination would produce a seemingly inoperative device, we have held that such references teach away from the combination and thus cannot serve as predicates for a prima facie case of obviousness." *Id.* (citation and internal quotation marks omitted); *see also In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984) (finding no suggestion to modify a prior art device where the modification would render the device inoperable for its intended purpose).

As discussed *supra*, there was sufficient evidence for a reasonable finder of fact to determine that a person of ordinary skill in the art would be discouraged from making the modifications Ford argues to be "obvious." The purpose of DuBois was to light a 10-foot-wide area of pavement on the road or highway next to the vehicle in order to illuminate at night the area where an approaching vehicle must pass. In contrast, the purpose of the Krippelz patent is to make the vehicle more visible by lighting particulate matter such as fog, rain or snow. Dr. Hansler testified that this was a novel idea at the time of invention. He also testified that the DuBois device is unsafe because even though the light from the device shines down onto the

pavement, to drive through a lighted area as large would result in light shining through the passing vehicle's side window and windshield, possibly blinding the passing driver. Using a beam of light in the DuBois invention would concentrate the light and increase the hazard to the passing driver. Moreover, according to Dr. Hansler, using a beam of light would not be an effective way to accomplish the purpose of DuBois in that a beam would be incapable of illuminating such a large area. Dr. Hansler testified that in conclusion, a person of ordinary skill in the art would neither look to the DuBois patent to solve the problem that the '903 patent sought to address nor to produce the intended effect of the DuBois patent, and the DuBois patent did not render the '903 patent obvious.

In addition to the testimony of Dr. Hansler, the testimony of Joseph Gemini ("Gemini"), Krippelz' damages expert, provides support for the conclusion that DuBois does not render the '903 patent obvious. Gemini testified that Krippelz' invention was commercially successful based on Ford's sale of 4.6 million vehicles with puddle lamps, yielding $233 million in revenue and $186 million in profit. Sales figures of a product embodying the claimed invention are sufficient to provide strong evidence of commercial success. *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1574, 1576 (Fed. Cir. 1984) (noting that "the evidence of secondary considerations in this case, particularly commercial success, is extremely strong," where the evidence of commercial success consisted of sales figures).[2] Additionally, Ford made an incremental profit of $40 for every vehicle sold with a puddle lamp, and Ford featured the puddle lamp feature in its marketing materials.

---

[2] I note that in *Simmons*, the parties stipulated that the industrial fastener at issue in that case was a commercial success based on sales figures. 739 F.2d at 1574. However, in its opinion, the Court commented on the strength of the evidence - the sales figures - and gave it great weight. It does not appear that the Court relied on the stipulation of commercial success.

Ford counters that Krippelz failed to show the nexus between the commercial success and the claimed features required for a finding of commercial success. *See Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). Ford relies on *Brown* for the proposition that the patent owner must show that "the marketed product embodies the claimed features, and is coextensive with them." *Id.* But Ford's reliance is misplaced. A patent owner need only show that "the marketed product embodies the claimed features, and is coextensive with them" in order to be entitled to a *presumption* that a nexus exists. *Id.* In this case, Krippelz did not rely on a presumption. At trial, he demonstrated that Ford put the feature on its best selling models, advertised it, and agreed to pay its supplier a royalty on sales of vehicles equipped with puddle lamps. Ford's witness Carl Buttermore testified that the device at issue "tickled [Ford's program manager's] fancy" and was something he thought the customers might like. Buttermore went on to say that by having such features on the vehicles - features customers like - they would "hopefully" buy Ford cars. The puddle lamp feature was not only aggressively marketed but also discussed internally as a "major product change." As I noted in my order denying Ford's motion in limine to exclude evidence of Ford's sales of vehicles as evidence of commercial success, it is difficult to calculate the worth of a specific element included in a product that contains a number of other elements. However, the fact that Ford chose to install the lamp and advertise it, and then sold a fair number of cars is evidence of commercial success of the lamp. A reasonable finder of fact could conclude that the Krippelz invention was not obvious and enjoyed commercial success. Even if Krippelz failed in demonstrating a nexus, the evidence discussed *supra* is sufficient to establish that DuBois teaches away and does not render the '903 patent obvious.

**2. The Miazzo Patent**

Ford contends that the Miazzo patent, which I excluded from the jury's consideration, renders claim 2 obvious.[3]  According to Ford, Miazzo teaches "a beam of light that diverges," which is a "conical beam of light."  Ford relies on the following sentence from the Miazzo patent: "When the lamp 8 is switched on by means of the aforementioned switch, a beam of light is obtained which shines out of the mirror 1 through the diffusion element 7."  In light of Dr. Hansler's testimony that the rays of a "beam of light" diverge, and the instruction that a "conical beam of light" is "a beam of light that diverges, Miazzo teaches a "conical beam of light." Ford contends that the sole issue for the jury, had Miazzo been admitted, would have been whether Miazzo's conical beam of light directly impinges on the side of the vehicle.  However, this evidence was not before the jury, and it therefore cannot support judgment as a matter of law. *See Haley v. Gross*, 86 F.3d 630, 632 (7th Cir. 1996) (considering evidence that came before the jury at trial in determining whether the movant was entitled to judgment as a matter of law).  The exclusion of the Miazzo patent is discussed *infra*, in the section addressing Ford's motion for a new trial.

**3. The File History**

Ford argues that the file history of the '903 patent also establishes invalidity when considered in light of DuBois and/or Miazzo. According to Ford, the court should have allowed its attorneys to read certain excerpts of the file history to the jury and should have given the file history to the jury during deliberations.  However, Ford is arguing for judgment as a matter of law based on evidence that was not before the jury.  As discussed *supra*, such evidence cannot

---

[3] Miazzo was admitted into evidence on the second day of trial.  However, after Dr. Van Derlofske testified inconsistently with the court's claim construction, I struck all the evidence of the Miazzo patent.

16

support Ford's motion. The exclusion of the file history excerpts and my decision not to send it to the jury are discussed *infra*, in the section addressing Ford's motion for a new trial.

## 4. JMOL Conclusion

For the foregoing reasons, Ford's motion for judgment as a matter of law is denied.

## B. Motion for a New Trial

In the alternative, Ford moves for a new trial based on nineteen different arguments. Krippelz argues as a general response, that Ford has forfeited arguments that are underdeveloped or unsupported by pertinent authority. *U.S. v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990). However, *Giovannetti* was an appeal. In moving for a new trial, the movant need only afford to the opposing party notice of the grounds for the motion and provide the opposing party a meaningful opportunity to respond. *Registration Control Systems, Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807-08 (Fed Cir. 1990) (applying Seventh Circuit law). Therefore, I will address each of Ford's arguments in turn.

## 1. Whether The Great Weight of the Evidence Shows That Claim 2 is Invalid

Ford first argues that it is entitled to a new trial on the ground that the verdict in this case is contrary to the great weight of the evidence. According to Ford, DuBois or Miazzo alone, or the two together, invalidate the '903 patent. Furthermore, Ford argues, the excluded file history confirms that the only distinguishing feature of the '903 patent - a "substantially unadjustable" housing - was present in both the DuBois and Miazzo patents. Because I have already found that the DuBois patent does not invalidate the '903 patent, I need not discuss it here. And because Miazzo and file history were not before the jury, they are not part of the evidence. For the reasons outlined in my opinion on the motion for judgment as a matter of law, there is a

sufficient evidentiary basis to support the verdict in this case, and Ford's motion for a new trial on this ground is denied.

## 2.  The Court Should Have Instructed The Jury That "Adjacent" Means "Close To"

Ford maintains that a new trial should be granted because the court failed to instruct the jury that "adjacent" means "close to."  It is true that notwithstanding the fact that a word in a claim may have a well-understood meaning, where there is a dispute over its meaning, the court is required to construe it.  *O2 Micro Intern. Ltd. V. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).  However, in this case, the dispute is not over the meaning of the word "adjacent," but rather its application to the prior art.

In suggesting a dispute, Ford points to testimony by Dr. Hansler that the device in position 39 of Fig. 5 of the DuBois patent "might be [adjacent], but it certainly is not clearly adjacent to a side window."  But this does not indicate that Dr. Hansler was uncertain of the meaning of the work "adjacent."  Rather he was uncertain as to whether the position of the device is clearly adjacent.  According to Krippelz, this uncertainty stems from the low resolution of the drawing and the absence of any demarcation of the rearward extent of the window.  In addition, the drawing does not indicate whether the device was mounted on the side, top or rear surface of the cab and there is no discussion of its location in the text of the disclosure. Ford counters that the rearward extent of the window is in fact visible, as indicated by the length of the horizontal line indicating the window's width, and that it is irrelevant whether the housing is mounted on the side, top or rear of the cab's surface as long as it is "close to" the window. These arguments are compelling, but Ford cannot show prejudice from the error it has alleged, since DuBois does not disclose a conical beam of light.

18

### 3. Whether Ford Is Entitled To A New Trial On Damages Because The Court Refused to Instruct The Jury On The "Housing Opening" Limitation

Ford argues that it is entitled to a new trial on the issue of damages because the court declined to allow Ford to show the jury "Ford's accused housing with the lenses removed, or argue that removal of the lenses affected the value of the puddle lamps." Prior to trial, the court construed the term "opening" in claim 2 as requiring "something that is open; breach; aperture." Ford argues that until the lens is removed from the puddle lamp housing, the housing has no "opening" as required by the court's construction. According to Ford, because Ford never used a lensless puddle lamp, Ford's use of the Krippelz patent was limited and of minimal value to it. Therefore, these arguments would have altered the jury's assessment of damages in this case.

In response, Krippelz argues that Ford is making a back-door attack on the Court's summary judgment ruling of infringement. On summary judgment, Ford made similar arguments about the presence of the lens, and this Court rejected those arguments, finding it proper to "treat the lens as an 'additional element,' the presence of which does not avoid infringement." Before trial, Ford made the same argument, that it sells the devices with lenses that destroy any "beam light," and for this reason, the value of the invention is zero to the customer. But I agreed with Krippelz that this was simply an argument that Ford was not infringing, and I granted Krippelz' motion to exclude any evidence of argument with respect to the lens at the bottom of the Ford puddle lamp housing.[4]

At trial, Ford raised the issue once again. I noted that the issue was debatable, but excluded the evidence under Federal Rule of Evidence 403. I had already found on summary judgment that Ford's device was infringing. To raise the issue before the jury of whether the

---

[4] Ford was entitled to show the device with the lens on, just not what the light looks like when it passes through the lens.

housing had the requisite opening with lens on would not only have confused the jury but also would have prejudiced Krippelz. Ford was essentially seeking to tell the jury that its device did not meet the claim construction in this case; this would have contradicted my summary judgment ruling. For these reasons, the housing opening arguments and lense evidence was properly excluded.

### 4. Whether The Court Should Have Instructed The Jury That "Conical Beam Of Light" In Claim 2 Means Diverging Light Directed Downwardly With Defined Sweep Range

Ford moves for a new trial on the issue of infringement, arguing that the court's construction of "conical beam of light," as incorporated into the jury instructions, was incorrect. Prior to trial, the court construed the phrase "conical beam of light" as "a beam of light that diverges," and the phrase "beam of light" as having a "defined sweep range." Ford argues that had I given Ford's proposed jury instruction[5] at trial rather than "a construction that differed considerably from the [pre-trial] construction" the jury would have decided the case differently.

This instruction given at trial read: "The source of light must also direct a conical beam of light (a beam of light that diverges) downwardly (but not necessarily perfectly downwardly) through the opening and along the side of the vehicle." The phrase "beam of light" was defined as "light that both is directed and has a defined sweep range." Ford is correct that the term

---

[5] Ford's proposed instruction read:

The phrase "conical beam of light" means light having a conical shape. All light within a defined sweep range is conical beam light. The conical beam of light may include light coming directly from the light bulb. This conical beam of light can be narrow, or it can be wide like a floodlight. The conical beam of light must shine downwardly, but it need not shine perfectly vertically downward.

"directed" did not appear in the previous claim construction, but if this is an error, it is harmless, since claim 2 requires "directing" a beam of light "downwardly."[6]

Ford also disagrees with the additional clarification given in the instruction:

Beam light is not necessarily all the light that passes through the housing opening, as a lighting device may produce both beam light and non-beam light. For example, light rays that come directly from the filament of a light bulb do not form a 'beam of light' because they are not directed. Similarly, if a bulb is placed in a covering that shields a portion of the light rays, that alone does not create a beam of light because the light that escapes is not directed.

According to Ford, these limitations "followed from the court's erroneous conclusion that light rays in those particular configurations are not 'directed,'" which, Ford argues, should have been a question for the jury. But even at trial, Ford continued to suggest that a bulb in a hood creates a beam of light. Despite the fact that I have rejected this argument repeatedly during the course of this litigation,[7] it reemerged during the testimony of Dr. Van Derlofske. While discussing the Miazzo device, Dr. Van Derlofske presented an illustration of how the light might look coming out of the device. Essentially, Dr. Van Derlofske testified that Miazzo produced a "conical beam of light," but that this beam was a result of "the relationship between the source of light and the housing." Dr. Van Derlofske did no analysis of the light as it was being emitted from the source, *without the housing*. Essentially, Ford was presenting the bulb in a hood theory, and its proposed instruction could be read to be consistent with such a theory.

---

[6] I recognize that there is some ambiguity in the claim language that "a source of light mounted within said housing for directing a conical beam of light downwardly through said opening along." In isolation, this could be read to mean either the "source of light" or "said housing" directs the beam downwardly. Read in context, I find the source of light is that which directs light downward.

[7] This theory was discussed in detail in my July 20, 2004 Memorandum Opinion and Order, Docket Entry 158.

The clarifications included in the given instruction were consistent with the claim construction and necessary to avoid confusion. They did not address questions that should have been left to the jury, since the definition of beam light is one of claim construction. Finally, Ford cannot show prejudice here. It claims that without the added clarifications, Ford would have prevailed on validity since "[i]t is undisputed that the DuBois patent shows diverging light, directed downwardly, with a defined sweep range." But this mischaracterizes Dr. Hansler's testimony, as discussed *supra*. Dr. Hansler testified that when the claim construction is applied as a whole, DuBois does not disclose a conical beam of light. This testimony is sufficient evidence to support the jury's finding of validity.

## 5. The Court Erred By Construing "Beam Of Light" At Trial To Exclude Light Directly From The Bulb

In a similar argument, Ford moves for a new trial on the issues of infringement and damages based on the court's construction of "beam of light" at trial as excluding light directly from the bulb. Ford argues that this exclusion is inconsistent with Krippelz' statement to the PTO that light directly from a bulb is beam light. This is essentially the restatement of an argument made by Ford in its summary judgment briefing.

Ford cites *Phillips v. AWH Corporation*, 415 F.3d 1303, 1317 (Fed. Cir. 2005), for the proposition that "prosecution history provides evidence of how the PTO and the inventor understood the patent." But the record suggests that Krippelz' statement to the PTO was based on the examiner's previous statement that the Pissis device formed a beam of light.[8] His reference to the Perrin device forming a beam of light comes from the language of the Perrin

---

[8] The Amendment that Ford cites to was sent to the PTO on October 30, 1990, and received on November 9, 1990, approximately eight months after the examiner's conclusion that the Pissis patent teaches a beam of light.

patent itself. Furthermore, Ford cites no law to support the assertion that the examiner's reading

of Pissis should be granted greater deference than the Board of Patent Appeals' conclusion that

the Kim device, which is a bulb in a hood, does not make a beam of light.

Ford argues that it has been prejudiced by the instruction, because it was based on a new

construction of "conical beam of light" - one inconsistent with the pre-trial construction. But in

my July 21, 2004 Memorandum Opinion and Order, I discussed in depth the question of whether

a "conical beam of light" should be construed as "all light from the source that passes through

the housing opening." I rejected this construction and explained the difference between beam

light and non-beam light, and explained that I saw

> no limitation in the patent that all of the light from the 'source of light' is part of
> the 'beam of light.' While the 'source of light' does generate a 'beam of light,'
> there is no provision [in the '903 patent] explicitly teaching that the 'source of
> light' cannot produce any other light (i.e., non-beam light), and I should not
> impose negative limitations on a claim that are not explicitly provided in the
> claim.

In order to be a beam, the light must have a defined sweep range, but I noted that there was no

limitation that the "source of light" may produce some additional light outside of this "defined

sweep range." The clarification instruction was consistent with my July 21, 2004 opinion and

was not a new construction.

## 6. Whether Ford Was Prejudiced Because The Court Did Not Give A Definitive Construction Of "Conical Beam Of Light" Until The Last Day Of Trial And Then Excluded Miazzo

Ford argues that it was prejudiced because the Court did not give a definitive

construction of "conical beam of light" until the last day of trial and then excluded the Miazzo

patent. As discussed *supra*, the construction of "conical beam of light" issued at trial was not

new and Ford was not prejudiced.

Ford also contends that the Miazzo patent, which I excluded from the jury's consideration, renders claim 2 obvious and should have been admitted. According to Ford, Miazzo teaches "a beam of light that diverges," which is a "conical beam of light." Ford relies on the following sentence from the Miazzo patent: "When the lamp 8 is switched on by means of the aforementioned switch, a beam of light is obtained which shines out of the mirror 1 through the diffusion element 7." In light of Dr. Hansler's testimony that the rays of a "beam of light" diverge, and the instruction that a "conical beam of light" is "a beam of light that diverges," Miazzo teaches a "conical beam of light." Ford contends that the sole issue for the jury, had Miazzo been admitted, would have been whether Miazzo's conical beam of light directly impinges on the side of the vehicle. Ford maintains that Miazzo teaches one skilled in the art that the light does not impinge on the side of the vehicle without a lense, and that "[b]ecause this is the only element potentially missing from Miazzo, no reasonable jury could have found Krippelz' patent nonobvious in view of Miazzo." Ford maintains that Dr. Van Derlofske's testimony supported this conclusion and that his testimony on the Miazzo patent should not have been excluded. Even without Dr. Van Derlofske's testimony, Ford argues, a reasonable jury could only have concluded that the Miazzo patent invalidated claim 2 of the '903 patent.

Dr. Van Derlofske's testimony was properly excluded at trial. As discussed *supra*, Dr. Van Derlofske testified that Miazzo produced a "conical beam of light," but that this beam was a result of "the relationship between the source of light and the housing." Dr. Van Derlofske did no analysis of the light as it was being emitted from the source, *without the housing*. The analysis presented at trial was inconsistent with the court's construction that a bulb in a hood does not make a beam. With no alternative analysis, Dr. Van Derlofske's testimony on the issue could no longer remain in the case.

24

The parties dispute whether the Miazzo patent could have gone to the jury without proper expert testimony. According to Krippelz, where the "subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson," the district court has discretion to require a party "to present expert testimony in order to establish invalidity." *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008); *see also Koito Mfg. Co., Ltd. v. Turn-Key-Tech*, LLC, 381 F.3d 1142, 1151 (Fed. Cir. 2004) (insufficient evidence to support verdict of invalidity where party "entered the [allegedly invalidating] reference into evidence, but otherwise failed to provide any testimony or other evidence that would demonstrate to the jury how that reference met the limitations of the claims in the [asserted] patent or how the reference enabled one of ordinary skill in the art to practice the claimed invention"); *In re Brimonidine Patent Litig.*, 666 F. Supp. 2d 429, 454 (D. Del. 2009) (granting plaintiff Rule 52(c) judgment as a matter of law on defendant's obviousness arguments that were based on prior art references and combinations of references not discussed or referred to by any witness at trial and not supported by any expert testimony).

Krippelz maintains that this case is of sufficient complexity as to require expert testimony to send the Miazzo patent to the jury for consideration. Dr. Van Derlofske testified that for purposes of this case, a person of ordinary skill in the art "would have a bachelor's degree in optics or physics or mechanical engineering or a similar field and probably three years of experience in the lighting industry." Ford counters that applying Miazzo to claim 2 of the '903 patent is not a complicated task, and points to cases where rulings on obviousness were made without expert analysis. *Ball Aerosol & Specialty Container, Inc. v. Limited Brands*, *Inc.*, 555 F.3d 984, 991-93 (Fed. Cir. 2009) (reversing summary judgment of non-obviousness and holding claim obvious as a matter of law, without expert analysis, based solely on a review

25

of the prior art); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir.

1984) (upholding the lower court's obviousness ruling where "the references and appellant's

invention are easily understandable without the need for expert explanatory testimony.").

     One problem with Ford's argument is that, had Miazzo been admitted, Krippelz proffered

that Dr. Hansler would have testified that Miazzo does not disclose a parabola of revolution and

thus does not create a beam of light that is both directed and diverging. Ford argues that because

Dr. Hansler "admitted" on cross examination that all beam light diverges, there can be no

legitimate dispute as to whether Miazzo teaches a conical beam of light. Despite Ford's

contention that Krippelz' argument is not viable, it is clear that had Miazzo been admitted into

evidence, at least one other limitation would have been in dispute. It is also clear from the years

of litigation in this case that the issue of whether a device makes a "conical beam of light" is not

uncomplicated and expert testimony would have been necessary to support each side's view.

Moreover, the jury had already heard from Dr. Van Derlofske that the Miazzo device produced a

conical beam of light. As discussed *supra*, his testimony was properly excluded. The jury

would have been left to apply claim 2 on its own, with only the erroneous expert analysis as a

backdrop. Notwithstanding the exclusion of Dr. Van Derlofske's testimony, it is difficult to see

how the jury could not consider it in the absence of any evidence of a properly conducted

alternative analysis. This is one instance where the bell could not be unrung. For these reasons,

admitting the Miazzo patent without expert testimony would have been inappropriate.

     Even if Miazzo had been admitted, a rational finder of fact could not have found that it

rendered the '903 patent obvious. The Miazzo patent discloses a lighting device inside rearview

mirror housing. The purpose of the device is to make the mirror visible to other drivers so as to

avoid collisions. But the Miazzo patent teaches that the light should light the side of the vehicle,

26

- just the opposite of the '903 patent's specification that "opening" and "source of light" be "positioned to prevent said beam of light from directly impinging on said side of said vehicle" to prevent blinding other drivers. This suggests that Miazzo teaches away from claim 2 of the '903 patent.

Ford counters that the Miazzo patent's specification that the light lights the side of the vehicle, is disclosed in conjunction with additional possibility that "can be taken advantage of by specially effected means, as when the diffusion element 7 is suitably structured and arranged on the bottom part of the protective housing[.]" In that instance, "when the lamp is switched on it lights the side of the vehicle[.]" According to Ford, because its own device was analyzed for infringement with the lens off, the court must also examine the Miazzo device with the lens off. Without the lense, the light does not impinge on the side of the vehicle. Therefore, Miazzo does not teach away from claim 2 and is in fact identical to claim 2.

Ford also fails to recognize that without a proper analysis of whether Miazzo actually produces a conical beam of light, as compared to the phrase *as construed*,[9] no rational jury could find that the Miazzo patent teaches a conical beam of light. Krippelz also argues that Miazzo does not teach that its device is mounted adjacent to a side window. The patent states that the device should be "fixed rigidly to the body of a motor vehicle[,]" but makes no mention of being adjacent to a side window. However, this argument may be unavailing in light of the fact that the Miazzo device is an "exterior rearview mirror for motor vehicles." If it is not clearly disclosed that such a mirror is mounted adjacent to a side window, then it is might be obvious to the person of ordinary skill in the art to mount it there.

---

[9] Krippelz is correct in its assessment that without any expert testimony, Ford is basically playing a "word matching game" with regard to whether Miazzo teaches a conical beam of light.

**7. Whether The Court's Exclusion Of Ford's LightTools Evidence Justifies Reconsideration Of Summary Judgment**

Ford moves for a new trial on infringement on the ground that the Court erroneously refused to consider as evidence Dr. Van Derlofske's LightTools ray traces at the summary judgment stage.[10] This issue has been raised before me several times during the litigation, beginning in April 2008 all the way up through November 21, 2008, a couple of weeks before trial. Ford's arguments this time are an echo of earlier ones. Basically, Ford maintains that simulations performed using the computer program LightTools, are essentially the same as those that would be created by hand. Therefore, even though LightTools was not generally used (nor did it exist) in 1989, the time the patent was filed, it is acceptable evidence and should not have been excluded.

In *Abbott Laboratories v. Alra Laboratories, Inc.*, No. 92 C 5806, 1997 WL 667796, at *6 (N.D. Ill. Oct. 24, 1997), this Court observed that "[i]t is well established that a party cannot avoid a finding of infringement by relying on tests not known to the art at the time of the application for the patent or that were not generally used at the time." Ford provided no evidence that LightTools was "known to the art" or "generally used" in 1989. Ford does argue that the technique of ray tracing did exist at the time, and that using LightTools is simply doing with a computer what you could do by hand. But Ford produced no evidence of this either. And while ray tracing as a technique has existed for years, this technique is exponentially more precisely, accurately and efficiently carried out with a current version of a computer program

---

[10] Krippelz argues that Ford has waived this argument by failing to submit a supplemental brief on LightTools, as it had proposed to do at the summary judgment hearing. Ford maintains that the Court did not grant its request, however, a review of the submitted transcript reveals no denial of the request. Ford could have asked for clarification had it been unsure of whether it had leave to file the supplemental brief.

such as LightTools. In argument, Krippelz' counsel represented to the court that LightTools has options for things like Monte Carlo calculations, and other complicated algorithms that are nearly impossible for a person to conduct without the use of a computer. A cursory review of a LightTools brochure confirms this representation.[11] Ford noted several times that the simulation is no different than doing the drawings by hand, but I note that even over the many months of arguing the point, Ford did not submit the hand-drawn equivalent. Without any evidence of how LightTools was used and whether these uses were "generally used" at the time, Ford's LightTools simulation was properly excluded.

**8. Whether Ford Was Entitled to and Effectively Did Cross Examine Dr. Hansler about the Court's Construction of the Word "Conical"**

During the cross examination of Dr. Hansler, Ford's counsel inquired into his understanding of the term conical as it applies in this case. At one point, Ford's counsel moved to show Dr. Hansler the Court's construction of the term, which I refused to allow. Later in the cross examination, Ford's counsel again asked Dr. Hansler about his understanding of the term "conical." After eliciting a response,[12] counsel sought to introduce deposition testimony "to rein

---

[11] *See* http://www.opticalres.com/lt/LIGHT_TOOLS.pdf.

[12] Ford highlights the following exchange:

> Q: . . . [T]he court has said that conical beam of light is a beam of light that diverges, right? defining the word conical in that sentence, right?
>
> * * *
>
> A: And my belief is that the definition of a conical beam implies that the shape is, in fact, conical, or a cone shape.
>
> Q: Like a right cone you're talking about?
>
> A: Which means that the cross-section of such a beam would,

in Dr. Hansler." Because the deposition was taken prior to the court's claim construction, I refused to allow it.

Ford maintains that my refusal to allow cross examination on the Court's order or on the deposition transcript was erroneous and prejudicial, and warrants a new trial. This argument is not persuasive. First, Ford's counsel did cross examine Dr. Hansler on the court's construction, as discussed *supra*, n.11. Second, because the court instructed the jury on the proper construction, the jury could decide from the cross examination whether Dr. Hansler properly applied the correct construction or failed to do so. The jury had a full picture of Dr. Hansler's testimony and could decide to accept his testimony that favored Krippelz. Ford was not prejudiced.

### 9. Whether The Court Erred By Excluding From Evidence The File History And The Fact That The Unadjustable Element of Claim 2 Was The Only Novel Feature

At trial, Ford sought to read portions of the prosecution file history into the record and Krippelz objected. I heard arguments on the objection and, although the file history was a joint exhibit admitted into evidence,[13] I sustained Krippelz' objection. Ford now argues that this was an error, and that it is entitled to a new trial.

In reading the portions of the file history, Ford hoped to show that Krippelz obtained claim 2 only after adding by amendment the specification that the housing was "substantially unadjustable." According to Ford, by showing the jury the rejections and subsequent amendments, Ford could demonstrate that there was really only one novel element in claim 2,

---

in fact, be neither [sic either] a circle or ellipses. . . .

[13] Ford makes much of the fact that the history was a joint submission, but ignores the fact that even joint submissions are subject to the rules of evidence and their use may be limited depending on the purpose for which they are submitted.

and because the Patent and Trademark Office ("PTO") had found all the other claims to be obvious, Ford need only prove that that one element - a substantially unadjustable housing - is obvious in order to invalidate the patent.

In my ruling I gave several grounds for sustaining the objection. First, I found that this theory of defense was not adequately noticed. Neither Krippelz nor the court was on notice that this theory would be presented. In answering Krippelz' contention interrogatories on the issue of its invalidity case, Ford referred to its expert reports, and the expert reports submitted by Ford contained no mention of the prior art addressed in the opening file history. At no time did Ford supplement its response. This is just the kind of unfair surprise Federal Rules of Civil Procedure 26(e) and 37(c)(1) are intended to prevent.

Second, I found that there was no evidentiary basis for reading the excerpts into evidence. Ford essentially wanted the jury to draw its own inferences as to what each step of the application process means, how it is conducted and how much weight to afford interim decisions. This is a prosecution that took place over 13 years, involved several stages of review, many examiners, and a final reexamination. The procedure itself and the significance of each step in light of the final issuance of the patent would be confusing to the jury and hard to understand. Ford presented no expert testimony on PTO practices. Furthermore, without a deeper understanding of the findings as a whole, the intent of the examiners, and the final approval, it would be inappropriate to ask the lay jury to infer that it was one element that made the Krippelz device as a whole an "invention." This would invite the jury to determine obviousness based on one single element within the claim, but "[t]he determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008).

31

Finally, the exclusion of the file patent history is appropriate under Federal Rule of Evidence 403. Counsel for Krippelz made it clear that had Ford read certain portions to the jury, Krippelz would have sought to read other portions for the sake of completeness. This would not only have added to the confusion but would have been a waste of time since the patent history was not probative as to whether the device as a whole was obvious.

Ford also argues that the file history should have been sent to the jury room during deliberations. The file was not read to the jury, and there was no need to send it back. I made clear that it has been my practice not to send the file wrapper back to the jury room, but left open the possibility that if a juror were to request it, I would consider doing so. No such request was made. For the foregoing reasons, the decision to prohibit portions of the file history from being read and to decline sending the file history to the jury during deliberations was not erroneous and does not warrant a new trial.

## 10. Whether The Court Erred By Granting Summary Judgment Of Infringement

Ford contends that on summary judgment it demonstrated a genuine issue of material fact as to whether the lamps in five of its vehicles met the substantially "unadjustable" element of claim 2. But Ford's motion for reconsideration is untimely, and it offers no evidence of an error of apprehension, no change in the law, and no new facts to support its motion. For these reasons, I adhere to my previous ruling that there was no genuine issue of material fact as to whether Ford's accused devices meet the "fixed, substantially unadjustable" requirement of claim 2.

Next, Ford argues that Dr. Hansler's testimony shows that Ford's reflectors are not parabolic. Ford points to testimony by Dr. Hansler that a "parabola of revolution" must be "the same shape all the way around." Ford maintains that "the record is undisputed that Ford's reflectors do not have 'generally the same shape all the way around.'" But on summary

judgment, Krippelz submitted the report of Mr. Rhiner, in which he determined that all three Ford reflectors to which Ford points are "parabolas of revolution and thus the curved reflector is a parabolic reflector." Ford points to nothing on summary judgment to contradict that evidence.

Ford seems to suggest that the fact that emerged at trial through the testimony of Dr. Hansler is a "new" fact, which changes the analysis on infringement. But this is not the case. A reading of the exchange leading up the to the question and answer relied upon by Ford reveals some confusion about what counsel for Ford is actually asking the witness. Further, Dr. Hansler's testimony that a parabola of revolution is "generally the same shape all the way around," does not mean, as Ford suggests, that Dr. Hansler is implying that some sort of symmetry is necessary. This is clear in the context of his expert report in this case. A look at the figures in Miazzo reveals that the cylindrical mirror there is symmetrical. In discussing Miazzo, he explains that the cylindrical mirror in that device is not a "parabola of revolution." Symmetry does not appear to be one of his criteria. Dr. Hansler's testimony does not invalidate the finding of infringement and Ford is not entitled to a new trial on this ground.

## 11. Whether Ford Was Prejudiced By Krippelz' Counsel's Arguments And By the Court's Statement To The Jury During Closing Argument

Ford argues that it was prejudiced by statement made by Krippelz' counsel during opening and closing arguments. First, in his opening statement, Krippelz' counsel stated that Ford had a higher burden of proof because "the patent office is presumed to know how to do their job, and they have people there who are trained not only in the law of patents but also trained in the specific technology of the patents that they're examining." In closing, counsel for Krippelz told the jury that Ford's burden of proof was one of clear and convincing evidence

because "the experts in the patent office are presumed to know what they're doing and they're presumed to get it right."

During his closing, Ford's counsel stated that Ford did not get to participate in the patent application process. Ford's counsel continued: "It would be as if coming to court, Krippelz could come in and give you all of his side of the argument." Krippelz objected to this argument, on the ground that it misstates the law. At that point, I explained to the jury that I would soon instruct them on the law and give them written copies of those instructions, and they would be able to determine for themselves whether the argument put forth by Ford was an accurate statement of the law. I then allowed Ford to continue, without sustaining the objection. After hearing arguments on a curative instruction, I instructed the jury as follows: "In deciding whether the patent is valid or invalid, you may not consider or give any weight to the fact that Ford did not participate in the patent office hearings." Ford argues that these statements were prejudicial and that it is entitled to a new trial.

Ford's arguments fail for several reasons. First, Ford did not object to either of the statements made by Krippelz' counsel at the time they were made, and the objections are waived. *See* Fed. R. Evid. 103(a). Second, the statements made during opening and closings properly characterize the applicable law. 35 U.S.C. §282; *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Third, the curative instruction was necessary because statements by Ford's counsel wrongly analogized the patent process to an adversarial trial, implying that Ford's absence rendered the process less than fair. But the law is clear that patents are presumed to be valid and the standard for proving invalidity is clear and convincing. I heard proposals and arguments on potential language of the curative instruction, and took care to ensure that it would not look like a "rebuke" to Ford's counsel. Ford cites no authority that the instruction misstated

the law, and it is difficult to see any prejudice where the jury was properly instructed.  For these reasons Ford's motion on this ground is denied.

**12.  Whether The Jury Should Have Been Instructed That The Burden Of Proving Anticipation Or Obviousness Is Reduced To A Preponderance Where It Is Based On Prior Art That Was Not Before The Patent and Trademark Office**

Ford cites *KSR*, 550 U.S. at 426, for the proposition that the presumption of validity is weakened and the defendant's burden of proof should be preponderance of the evidence where its anticipation and obviousness arguments are based on prior art that was not before the PTO. Krippelz claims that the failure to so instruct the jury warrants a new trial.  But the Court in KSR explicitly noted that "need not reach the question whether the failure to disclose [prior art] during the prosecution of [the patent at issue] voids the presumption of validity given to issued patent, for [the] claim [ ] is obvious despite the presumption." *Id.*   The Court did note that the rationale underlying the presumption seemed "much diminished," but it declined to change the rule that patents are entitled to a presumption of validity. *Id.*  For these reasons, Ford's motion for a new trial on this ground is denied.

**13.  Whether Ford Was Prejudiced By The Court's Comment to the Jury During Closing Argument That It Believed Krippelz' Counsel Was "Attempting" To "Show A Flawed Methodology In The Way" Ford's Expert "Approached The Analysis Of The Patent"**

During closing argument, Krippelz' counsel showed the jury Dr. Van Derlofske's animation relating to both Du Bois and Miazzo.  Counsel began to explain that the animation "proved that you would have to fundamentally change the Du Bois device to get the invention that Jacob Krippelz made."  Ford objected because one of the featured devices - the Miazzo device - was out of the case.  I overruled the objection on the ground that "in the context of what he wants to do with respect to his commentary on what the witness said, the witness' approach, [the animation is] admissible for that purpose."

35

Counsel for Krippelz continued on, explaining that the methodology used to analyze the Du Bois device was flawed. Ford again made the same objection, which I again overruled saying: "What I believe plaintiff's counsel is attempting to do is to show a flawed methodology in the way that the witness approached the analysis of the patents, and under those circumstances, I am permitting him to do that."

Ford claims that this comment affected the jury's view of Dr. Van Derlofske, and prejudiced Ford. But it was clear from his argument that counsel for Krippelz was intending to do just that. He discussed how in the animation Dr. Van Derlofske shrank the trunk, shrank the light, and "levitated" the truck in order to do his analysis. Krippelz' counsel made no mention of the Miazzo device depicted on the same page. I explained what I believed counsel was attempting to do, which was necessary for me to make clear, in response to Ford's second objection, the limited purpose for which the animation was admissible. Ford claims that Krippelz' counsel mischaracterized what the animation was attempting to represent, but Krippelz is entitled to make an argument that Dr. Van Derlofske's approach was flawed. Neither the ruling nor comment was inappropriate or prejudicial, and Ford's motion for a new trial on this ground is denied.

## 14. Whether The Court Erred By Instructing The Jury That It Should Consider "Commercial Success" In Deciding Validity Because Krippelz Offered No Evidence That Anyone Purchased A Ford Vehicle For The Courtesy Lamps Found To Be Infringing

I have already discussed the evidence of commercial success *supra*, finding that there was indeed sufficient evidence to support a finding of commercial success, and the instruction was appropriate. Ford's motion for a new trial on this ground is denied.

## 15. Whether The Court Should Have Construed "Emergency Warning Light" To Require A Light Mounted On A Vehicle Used To Make The Presence Of The Vehicle Known To

**Drivers Of Other Vehicles, Excluding Lights Used Primarily For Entering And Exiting The Vehicle Or Walking To The Vehicle**

Ford argues that Krippelz disclaimed his invention for the purpose of facilitating "ingress and egress from the vehicle or walking [to] the vehicle." According to Ford, this disclaimer of claim scope binds Krippelz, and summary judgment on infringement was inappropriate. Ford also argues that the Court should have instructed the jury that "emergency warning light," as contained in the preamble, excludes devices used for entering, exiting or walking to the vehicle, the value of Ford's invention would have been assessed differently.

Because Ford's motion for reconsideration of the summary judgment ruling is untimely, offers no evidence of an error of apprehension, no change in the law, and no new facts to support its motion, I adhere to my previous ruling that Krippelz' disclaimer was made with respect to claims not at issue in this suit, is contained in the preamble, and is therefore not a limitation on the scope of the claimed invention. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002) ("a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention.") (citation omitted).

As to the allegedly erroneous instruction, it is questionable whether Ford has preserved its objection on the issue, since, even though it submitted its own instruction, it made no mention of the "emergency warning light" language at the instruction conference. The Seventh Circuit has rejected the argument that a request for a specific instruction followed by the court's denial of that request is sufficient to preserve the issue for review. *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 439 (7th Cir. 2009). Ford made no argument at trial that the preamble might be relevant to the jury's assessment of damages. Furthermore, the

instruction itself was an accurate statement of the law and of my previous ruling on the issue. For these reasons, Ford's motion for a new trial on this ground is denied.

### 16.  Whether The Court's Finding Of Infringement Of Ford's Lamps With Their Lenses Removed Was Erroneous

Ford contends that the Court erroneously permitted Krippelz to remove the lens from Ford's lamps to find infringement, and that as a result, summary judgment on infringement was inappropriate.  But again, Ford's motion for reconsideration of the summary judgment ruling is untimely, offers no evidence of an error of apprehension, no change in the law, and no new facts to support its motion.  Therefore I adhere to my previous ruling that Ford's device is infringing.

Ford also argues that it should have been allowed to present at trial evidence that the lights with the lens off have no value, but as discussed *supra*, this evidence would have been prejudicial and confusing and its exclusion was reasonable.  For these reasons, Ford's motion for a new trial on this ground is denied.

### 17.  Whether The Jury's Imposition Of Damages Based On Factors Other Than The Incremental Novelty Of The "Unadjustable Housing" Was Erroneous

Ford argues that if the jury had known that the novelty of claim 2 related to the "substantially adjustable" limitation, the damages award would have been different.  But during trial Ford did not seek to admit this evidence to aid the jury in determining the value of the Krippelz patent to Ford, but rather to demonstrate to the jury that Ford only needed to prove that one element of the claim was obvious, and not the others.  Ford "cannot obtain a new trial based on a legal issue it failed to raise at trial." *See Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 826 F.2d 712, 717 (7th Cir. 1987).  For this reason, Ford's motion on this ground is denied.

Even if Ford did not waive this issue, the incremental novelty theory would have been problematic at trial.  Ford correctly argues, based on *Georgia-Pacific Corp. v. U.S. Plywood*

*Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), that one factor to be considered in a reasonable royalty analysis is "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results."  With this in mind, Ford's argument, if not waived, has some merit.  But it does not appear that this theory was properly noticed and there may not have been an evidentiary basis for what Ford suggests, since expert analysis as to novelty and value was conducted as to the device as a whole and not each element.

**18.  Whether It Was Erroneous To Exclude Evidence Of Non-Accused Lamps And Beam Light As It Was Emitted From Ford Lamps To Show The Value Of Krippelz' Invention To Ford**

First, Ford argues that it should have been able to show that the non-accused puddle lamps have the same value to Ford's customers as the accused puddle lamps. This argument has been made before me before and I have rejected it, because, especially in the context of this case, failure to sue does not establishment non-infringement.  I adhere to my previous ruling to exclude evidence of the non-accused puddle lamps, and Ford's motion on this ground is denied.

Second, Ford maintains that the "beam of light" required by the Krippelz patent was useless to Ford, and that Ford should have been able to demonstrate to the jury that the infringing beam of light emanating from Ford's device, as installed on the vehicles, was barely visible and of little value.  But this would have required the jury to see the device in operation with the lens on and for the reasons discussed *supra*, such evidence was reasonably excluded.  For these reasons, Ford's motion on this ground is denied.

**19.  Whether Ford Should Have Been Allowed To Tell The Jury That 50% Of Ford's Courtesy Lamp Designs Do Not Infringe**

Ford argues that it should have been allowed to tell the jury that 50% of Ford's Courtesy lamp designs do not infringe.  Because in the context of this case, failure to sue does not establish non-infringement, this evidence would have been inappropriate, as discussed *supra*. For this reason, Ford's motion for a new trial on this ground is denied.

**20. Motion For A New Trial Conclusion**

For the foregoing reasons, Ford's motion for a new trial is denied.

**IV.  CONCLUSION**

For the foregoing reasons, Ford's motions for JMOL and a new trial are denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE:  October 28, 2010